**KELLY CLARK, OSB #831723**
E-Mail: kellyc@oandc.com
**KRISTIAN ROGGENDORF, OSB # 013990**
E-Mail: ksr@oandc.com
**GILION DUMAS, ISB #8176**
E-Mail: giliond@oandc.com

**O'DONNELL CLARK & CREW LLP**
Fremont Place II, Suite 302
1650 NW Naito Parkway
Portland, OR 97209
Phone: (503) 306-0224
Fax: (503) 306-0257

Of Attorneys for Plaintiff Tom Doe

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TOM DOE, an individual proceeding under a pseudonym,<br><br>Plaintiff,<br><br>v.<br><br>CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in the State of Oregon; CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation sole registered to do business in the State of Oregon; THE BOY SCOUTS OF AMERICA, a congressionally chartered corporation, authorized to do business in Oregon; and ORE–IDA COUNCIL, INC., BOY SCOUTS OF AMERICA, an Idaho non-profit corporation doing business in Oregon,<br><br>Defendants | Case No.: 1:09-cv-351<br><br>**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE** |

Page i      **PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

# INTRODUCTION

Dépeçage represents a refinement and justifiable application of various states' laws in multistate tort cases.  Instead of applying the often incongruous and sometimes arbitrary winner-take-all approach of using one single body of law for claims or issues arising in different states, dépeçage allows a court to tailor a conflicts analysis to the unique situations presented in a particular case.

In this case, Oregon has a preeminent interest in prohibiting child abuse within its borders, no matter where the parties originate.  Similarly, Idaho has an admittedly significant interest in regulating the relationships formed between its residents.  Because of these opposing concerns, the "most significant relationship" test has demonstrated the limits of its functional use here, resulting in what could be deemed a "draw" between the states with respect to the abuse of Plaintiff that occurred in Oregon.  Yet as Plaintiff's counsel stressed at oral argument, it is difficult to envision a case in which Oregon would have a more overriding interest in applying Oregon law than to prevent child abuse with in its borders, irrespective of the various "contacts" set out in a highly subjective and necessarily inconsistent test.  Under Restatement (Second) of Conflicts § 145, dépeçage is available, and one might daresay intended, for "difficult cases" such as this.

Plaintiff agrees with the Court's tentative opinion that the doctrine of

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

dépeçage—incorporated into Oregon law through Oregon's adoption of

Restatement (Second) of Conflicts § 145—allows this Court to separate the claims

by the locus of the injury and apply the particular state's law to the individual tort

claims independently.  But this is no mere position of convenience.  Upon review

of the doctrine of dépeçage and the caselaw incorporating it, it appears that despite

many courts' confusion and varying approaches attendant to an obscure legal

doctrine, the proper application of dépeçage would allow this Court to apply

Oregon substantive law to claims of abuse occurring in Oregon.  Such an approach

would satisfy Oregon's concern that one of its chief and lasting resources—its

natural beauty—not be used by child molesters and those who enable them or

affirmatively conceal the danger of their presence.

 The wisdom in this approach is that it allows each state—both of which

have significant interests child abuse and the attendant litigation when abuse

occurs within their respective borders—to regulate the conduct in which it has the

greatest interest.  Ultimately, dépeçage was crafted to allow the exact type of "play

in the joints" of the law as described here, so that the Court is able to apply the

intricate legal rules of conflicts with an eye to justice and reason.[1]

---

[1] As explained by the Eastern District of New York:

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

Because each of Plaintiff's instances of battery could be pleaded as separate claims, and because dépeçage allows the application of different states' law to individual claims in a complaint, it is of no import that the Court separated out Plaintiff's Oregon abuse from the remainder of the abuse pleaded in the claim in drafting the tentative order.  Plaintiff will have to replead in any case to reflect the dismissal of the negligence claim, and it is simple enough for Plaintiff to plead the instances of Oregon abuse as separate claims, and to allege only the Oregon abuse in the fraud claim.  This allows Oregon to hold accountable the molester and the organizations that enabled his abuse.

---

"The court, however, cannot ignore two fundamentals: 1) it is dealing with human institutions that, unlike the exquisite machinery of atomic physicists with tolerances approaching zero, must interpret the law reasonably, with some play in its joints if it is to effectively serve its protective role, and 2) it is responding to a complex nationwide fraud allegedly created by defendants; the contention of the defendants that the plaintiff's claims are too widespread to be dealt with effectively by the courts must be considered in light of the allegations that it is defendants' pervasive fraud that has led to the need for nationally applicable remedies. The basic premise of law in this country remains that for every wrong there is a remedy, an effective and realistic remedy.

*Simon v. Philip Morris Inc.*, 124 F.Supp.2d 46, 77 (E.D. N.Y. 2000) (discussing certification of class despite differences in residency among the members, and determining that law of individual's residence would apply to individual claims, while NY law would apply to general liability in fraud).  *See further In re Simon II Litigation*, 407 F.3d 125, 136–38 (2nd Cir. 2005) (decertifying class based on lack of ability to discern limited fund in light of punitive damages potential).

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

## II.    DISCUSSION

This memorandum discusses the basic theory of dépeçage, its application in other courts, and its application to this particular case.

### A.    DÉPEÇAGE IN THEORY

Although not frequently encountered in the typical tort case, dépeçage as a doctrine is fairly well-established.  As the First Circuit has stated, "dépeçage erects the framework under which different issues in a single case, arising out of a common nucleus of operative facts, may be decided according to the substantive law of different states." *Putnam Resources v. Pateman*, 958 F.2d 448, 465 (1st Cir.1992).  One district court noted the origin or incorporation of the doctrine of dépeçage in Section 145 of the Restatement of Conflicts:

> "Dépeçage is a concept referred to in Section 145 of the Restatement (Second) of the Conflicts of Laws, which states that in choosing between different states' choice of law principles, the relevant factors 'are to be evaluated according to their relative importance with respect to the particular issue.' Restatement (Second) Of Conflict Of Laws § 145. Dépeçage is more explicitly endorsed in comment (d) to Section 145, which states that 'courts have long recognized that they are not bound to decide all issues under the local law of a single states, but instead each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states.' *Id.* at cmt. (d)."

*Schalliol v. Fare*, 206 F.Supp.2d 689, 700 n.30 (E.D. Pa. 2002) (citation omitted)

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

(in plane crash case, certifying question for appeal whether Indiana would use dépeçage where no Indiana caselaw dealt with the doctrine).  *Cf Knipe v. SmithKline Beecham*, 583 F.Supp.2d 602, 637 (E.D. Pa. 2008) ("dépeçage is explicitly endorsed in comment (d) to Section 145 of the Restatement (Second) of Conflict of Laws").[2]

While a good deal of dépeçage caselaw discusses the separation of ***issues*** in a case, dépeçage applies to individual ***claims*** for relief as well.  *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 152 -153 (2nd Cir. 2008) (noting that the application of "the laws of one state to bad faith claims and the laws of another state as to the underlying breach of contract claims" is "called dépeçage, [and]

---

[2]   One commentator even has argued that the use of dépeçage is essentially the default position in American law:

> "Whatever may be the methodological differences between the approaches of legal writers, the American Law Institute's second Restatement and the practice of the courts, ***all agree that choice of law must be made on an issue-by-issue basis*** and that such choice need not be the same as to every issue in a case."

C.L. Wilde, *Dépeçage in the Choice of Tort Law*, 41 So. Cal. L. Rev. 329, 347 (1967), *quoted in Ewing v. St. Louis-Clayton Orthopedic Group, Inc.*, 790 F.2d 682, 687 and n.19 (8th Cir. 1986) (emphasis added).  Obviously, the lack of a broad use and understanding of dépeçage has proven this author wrong in hindsight, but the comment certainly speaks to the close connection between Section 145 and the doctrine.

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'Donnell Clark & Crew LLP
Fremont Place II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

permits a more nuanced handling of certain multistate situations and thus forwards the policy of aptness. [I]t is not altogether uncommon.") (citation omitted).  *See also Value Partners S.A. v. Bain & Co., Inc.*,  245 F.Supp.2d 269, 274 (D. Mass. 2003) (describing dépeçage, "[a] plaintiff may bring claims under Massachusetts law even where other claims in the same case are governed by the law of a different jurisdiction"); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 397 n. 1 (2nd Cir. 2001) ("There is no conflict in applying New York law to one claim and Connecticut law to another"); *Jean v. Dugan*, 814 F.Supp. 1401, 1409–10 (N.D. Ind. 1993), *aff'd*, 20 F.3d 255, 261–62 (7th Cir.1994) (district court and the Seventh Circuit applied dépeçage with respect to separate legal claims, *i.e.*, claims of wrongful termination and a claim of defamation, not to separate issues within each of those claims).  Thus, the application of dépeçage to claims stemming wholly from the Oregon abuse is proper.

For all of the intricacies surrounding application of the doctrine, the core purpose of dépeçage is to allow a court to apply a particular state's law to a particular aspect of a case in which it has the greatest interest.  *See Schalliol v. Fare*, 206 F.Supp.2d at 700 n.30 ("it is important to understand that the search for the applicable law is not a general one, but rather it is one that takes proper notice of the fact that the significance of a state's relationship to a particular [tort] may

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX: (503) 306-0257

vary as a function of the particular issue being presented") (citation and internal

quotation marks omitted).  Commentators of the doctrine have likewise stated that

the purpose of dépeçage is to "apply the relevant rule of the state which has the

greatest concern in the determination of that issue." Willis M. Reese, *Dépeçage: A*

*Common Phenomenon In Choice of Law*, 73 COLUM. L. REV. 58, 59 (1973).  This

more nuanced and flexible approach to conflicts removes the sometimes arbitrary

and unjust application of a law that is entirely foreign to a given situation, even if

applicable to other aspects of a case.

In *Simon v. Philip Morris Inc.*, discussed above, Judge Weinstein offered a

test for when to apply dépeçage, taken from the legal commentary:

> [Dépeçage] is appropriate [where] [i]ts application "(a) would result in
> the application to each issue of the rule of the state with the greatest
> concern in the determination of that issue, (b) would serve to effectuate
> the purpose of each of the rules applied, and (c) would not disappoint
> the expectations of the parties." [Reese, *Dépeçage*] at 60.

*Simon v. Philip Morris Inc.*, 124 F.Supp.2d at 76.  This functional analysis serves

well in an area where bright line rules are elusive, and emphasis on various fact

patterns dictate the outcome of the analysis.

/ / / /

/ / / /

/ / / /

Page 7     **PLAINTIFF'S BRIEFING ON THE ISSUE OF
DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

## B.   Dépeçage in Application

In the Ninth Circuit, dépeçage has been recognized in the states of Oregon,[3] California,[4] Hawaii,[5] Arizona,[6] and Alaska.[7]  Nevada[8] implicitly rejects the doctrine, while Idaho, Washington, and Montana appear to be silent on the doctrine.  The Ninth Circuit Court of Appeals itself has mentioned dépeçage, and recognized Alaska's use of it, but did not feel any need to apply it in that specific case.  *Bell Helicopter v. U.S.*, 833 F.2d 1375, 1377 (9th Cir. 1987).[9]  A review of a

---

[3]   *See Warm Springs Forest Products Inds., a div. of Confederated Tribes of Warm Springs Reservation of Oregon v. Employee Benefits Ins. Co.*, 74 Or. App. 422, 430, 703 P.2d 1008, 1013 (1985), *and discussion in § II.C. of this memorandum, immediately infra*.

[4]   *Wash. Mutual Bank, FA v. Superior Court*, 24 Cal.4th 906, 103 Cal. Rptr. 2d 320, 15 P.3d 1071, 1081 (Cal. 2001) (adopting without using specific term).

[5]   *In re WPMK Corp.*, 59 B.R. 991, 995 (D. Hawaii,1986), *citing DeRoburt v. Gannett Co.*, 83 F.R.D. 574, 581 n. 29 (D. Hawaii 1979).

[6]   *Bryant v. Silverman*, 146 Ariz. 41, 44 n.1, 703 P.2d 1190, 1193 (Ariz. 1985).

[7]   *Savage Arms, Inc. v. Western Auto Supply Co.*, 18 P.3d 49, 53 (Alaska 2001)

[8]   *Coward v. First Magnus Financial Corp.*, No. 2:09-cv-01143-RCJ-GWF, 2009 WL 3367398, *7 (D. Nev. Oct. 14, 2009), *citing Gen. Motors Corp. v. Eighth Judicial Dist. Court of State of Nev. ex rel. County of Clark*, 134 P.3d 111, 116 (Nev. 2006) (applying only the most significant relationship test).

[9]   Dépeçage is used not infrequently by the federal Circuit Courts in general.  *E.g.*, *Johnson v. Continental Airlines Corp.*, 964 F.2d 1059, 1064 (10th

O'Donnell Clark & Crew LLP
Fremont Place II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

relevant cases from Alaska, California, and Arizona follows this brief historical review of dépeçage.

Dépeçage appears to have origins in New York, where the court departed from the "mechanical" *lex loci delecti* rule, stating that "[j]ustice, fairness and, the best practical result, may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 12 N.Y.2d 473, 481, 191 N.E.2d 279 (1963)

---

Cir.1992) (affirming the use of dépeçage generally, but holding that it "is inappropriate when used to fragment issues related to a common purpose"); *Foster v. United States*, 768 F.2d 1278, 1281 (11th Cir.1985) ("Pursuant to the conflicts doctrine of 'depecage,' different substantive issues in a single case may have to be resolved under the laws of different states where the choices influencing decisions differ"); *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 397 n. 1 (2d Cir.2001) ("Under the doctrine of depecage as applied by New York courts, the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate other issues") (internal quotation marks omitted); *Berg Chilling Systems, Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3rd Cir. 2006) ("Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as 'dépeçage'"); *In re Air Crash Disaster Near Chicago*, 644 F.2d 594, 611, 628-29 (7th Cir.1981); *La Plante v. American Honda Motor Co., Inc.*, 27 F.3d 731, 741 (1st Cir. 1994) ("Under the doctrine of dépeçage, different substantive issues in a tort case may be resolved under the laws of different states"); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 932 F.2d 1475, 1495 ( D.C. Cir. 1991) ("separate choice of law analysis of different substantive issues (called 'dépeçage') is now routine").

Page 9          **PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

(internal quotation marks and citation omitted).  This was in no way limited to evaluations of entire claims, but rather "[w]here the issue involves standards of conduct, it is more than likely that it is the law of the place of the tort which will be controlling, but the disposition of other issues must turn, as does the issue of the standard of conduct itself, on the law of the jurisdiction which has the strongest interest in the resolution of the particular issue presented."  *Id.* at 484. Thus from the beginning, the idea that different issues were subject to different analyses was evident.

In *Babcock*, the court held that New York's guest statute would apply to determine liability of an auto accident that occurred in Ontario, Canada, because the trip began and ended in New York and involved New York residents.  *Id.* at 482.  Despite superficial similarities to this case, *Babcock* is not dispositive for the reasons discussed by Professor Reese in his *Dépeçage* article, in discussing an accident where the standard of care in the locus state would result in liability but the domicile state would not:

> Assume that in state X, where both are domiciled, the defendant invites the plaintiff to accompany him as his guest on an automobile trip which would start in X ... and eventually end in X. The plaintiff is injured in an accident in state Y, and thereafter he brings suit in X to recover for his injuries. The accident would not have occurred if the automobile had been equipped with a safety device required by Y law but not by that of X. Also, the Y courts have held that operation of an automobile without

Page 10       **PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

such a safety device constitutes negligence *per se.* On the other hand, a driver enjoys complete immunity from tort liability to his guest under Y law. He has no such immunity under the law of X. ***It seems reasonably apparent that in this case the X court should grant recovery to the plaintiff through the use of dépeçage even though he could not obtain relief against the defendant through the exclusive application of either X or Y law***. Since the parties were domiciled in X, [etc.] ... , it seems clear that X is the state with the greatest concern in the determination of the question whether the defendant should be immune from tort liability to the plaintiff. And this would be true whether the purpose of the Y guest-passenger law was to protect the driver against the ingratitude of the guest or to protect the insurance company against the collusion of guest and driver. ***On the other hand, it seems equally clear that Y is the state of greatest concern with respect to the issue of the defendant's liability for failure to equip the automobile with the required safety device. No state has as great a concern as Y in the safety of its highways; it was to promote such safety that Y required the installation of the safety device and that the Y courts held that failure to comply was negligence per se.*** Application in this case of the X rule that a driver enjoys no special immunity from tort liability to his guest and of the Y rule relating to the safety device would further the purpose of each rule and would result in the application of the rule of the state with the greatest concern in the determination of each issue. Under these circumstances, the use of dépeçage would seem proper.

Reese, *Dépeçage*, 73 COLUM. L. REV at 61–62 (emphasis added). While discussed more fully below, suffice it to say that Idaho offers no particular blanket immunity for Defendants, and its child abuse statute of limitations is functionally similar to Oregon's but for retroactivity. As with the example above, Oregon's *respondeat superior* law is concerned with the safety of its recreational areas, and Oregon has

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX: (503) 306-0257

adopted strict rules of liability to promote a child's safety here.[10]  Thus, contrary to first appearances, the use of Oregon's liability and statute of limitations schemes for the Oregon instances of abuse meets the *Babcock* guidelines for applying dépeçage, and would favor the application of Oregon law for those claims.

Now, turning first to Alaska, the case of *Savage Arms, Inc. v. Western Auto Supply Co.*, 18 P.3d 49, involved the use of dépeçage with respect to a claim of strict liability of a corporate successor for a misfiring rifle where no successor liability existed under Alaska law.  Instead of simply blindly applying the law of the state of the corporate succession, the Alaska court looked at the successor liability issue in isolation under dépeçage, and determined first that successor liability was a matter of tort law, not contract, where strict liability was concerned. *Id.* at 53–54.  The court then adopted its own successor liability doctrine, and held the successor corporation liable for the injury to the plaintiff, based on the fact that the successor continued the earlier corporation's business, as well as because the injury occurred in Alaska and the plaintiffs lived there.  *Id.* at 54.  In other words, because a lack of successor liability under Texas law (where the original

---

[10]  *Cf. Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 14 (1991) ("Imposing liability without independent fault deters fraud more than a less stringent rule").

Page 12      **PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

manufacturer and successor were located), the Alaska court decided that its strict liability system overrode the core connection that Texas had with the business relationship between those parties, particularly because the tort occurred in the jurisdiction of Alaska, and imposing liability on a party other than the victim was Alaska's foremost interest. *Id*. at 53 ("[t]he purpose of the modern strict liability regime is to insure that the cost of injuries resulting from defective products [is] borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves") (citation and internal quotation marks omitted).

In California, the use of dépeçage was rejected where the defendant sought to slice the issues too thinly.  In *Bolt v. Merrimack Pharmaceuticals, Inc.*, 2005 WL 2298423, *6 (E.D. Cal., Sept. 20, 2005), the defendant was attempting to argue for prejudgment interest based on California law on a shareholder damages award arising out of Massachusetts law, simply because the plaintiff had filed in California, his place of residence.  The district court applied California dépeçage rules (with the caveat that it was irrelevant to the ultimate holding), and found that based on the contractual relationship being centered in Massachusetts—and the federal shareholder statute that applied the law of the state of incorporation, which was dispositive otherwise—Massachusetts had the greatest interest in determining

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

the amount of prejudgment interest. *Id.* at *6–7.[11]

Finally, the Arizona Supreme Court resorted to the doctrine of dépeçage in *Bryant v. Silverman*, 146 Ariz. 41, 703 P.2d 1190 (1985), because the Court recognized that actual recovery of significant damages furthered the core purposes of tort law.  The issue in *Bryant* was whether to apply Arizona's or Colorado's law in an Arizona wrongful death action brought by an Arizona plaintiff against an Arizona corporation arising from an accident in Colorado.  The Court applied dépeçage to the separate issues of compensatory damages and punitive damages, and concluded that Arizona had the greatest interest in the determination of both issues.  In its analysis, the court placed significant weight on effectuating the policy of the state with the greatest interest in (1) compensating plaintiffs, and (2) deterring wrongful conduct, and noted:

> Application of Arizona damage law allowing unlimited compensatory and punitive damages would fully compensate the Arizona plaintiffs and would deter the wrongful conduct of [defendant]. . . . Application of

---

[11]   *Compare*, *Global Relief Found. v. New York Times Co.*, 2002 WL 31045394, *10 (N.D. Ill. Sept. 11, 2002) (finding that while Illinois law governed a defamation action against an Illinois domiciliary, California had an overriding interest in applying its anti-SLAPP privilege to California newspapers such as the San Francisco Chronicle), *with Competitive Technologies v. Fujitsu Ltd.*, 286 F.Supp.2d 1118, 1158 (N.D. Cal. 2003) (where speakers were not physically in California, the state had no interest under its anti-SLAPP law in the protection of opinion).

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

> Colorado law, however, would shield [defendant] from a high damage award and potentially leave the Arizona plaintiff not fully compensated. Additionally, Colorado law would not deter future misconduct in Colorado or Arizona.

*Id*. at 46.  As discussed more fully below, this rationale supports the use of Oregon's law regarding *respondeat superior* and the attendant statute of limitations, because even more clearly from a recovery standpoint, only Oregon law would allow recovery and provide some deterrent effect to Defendants, only one of which is even an Idaho domiciliary.  It borders on the absurd to argue that a single Defendant's domicile here (the Ore-Ida Council, which conducts regular business and includes members located in Oregon, no less), and the attendant ability of Idaho law to shield ***all*** of the Defendants from liability on procedural grounds, is of greater concern to Idaho than Oregon's dual interests in deterring child molestation by holding Defendants liable for the abuse wrought by their shared agent, and obtaining compensation for a man who discovered his injury in Oregon.

To be sure, none of the cases reviewed discusses the use of dépeçage with respect to multiple independent torts committed in multiple locales by an agent with a principle-agent relationship centered in the domiciliary state.  And naturally, "multi-state transactions are more complex when the defendant's tortious

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

conduct and the plaintiff's injury occur in different states." *Simon v. Philip Morris Inc.*, 124 F.Supp.2d at 57.  Plaintiff does not pretend this is an easy analysis, when considering the entire universe of conduct at issue here.  However, considering only the Oregon abuse and claims based on that abuse alone—which is perfectly permissible under dépeçage doctrine—the analysis becomes much simpler.

## C.   DÉPEÇAGE IN THIS CASE

As Plaintiff explained in the motion to dismiss briefing, the law of Oregon applies to the determination of which state's law applies in this case.  *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("where the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue").  *See also Mail Boxes Etc., USA, Inc. v. Considine*, 229 F.3d 1158, 1158 (9th Cir. 2000) (the "rule in diversity cases is ... [to] use the forum state's conflict rules").  Oregon is the forum here.  Under Oregon conflicts law, "if plaintiffs' claims could be based on more than one state's substantive law, we use our conflict of laws rules to determine the applicable substantive law and apply the corresponding statute of limitations." *Cropp v. Interstate Distributor Co.*, 129 Or. App. 510, 514, 880 P.2d 464 (1994)

Of course, there is no question that Oregon has adopted Section 145 as its

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

conflicts of law test.  *E.g.*, *Casey v. Manson Constr. Co.*, 247 Or. 274, 428 P.2d 898 (1967).  Similarly, Oregon has dealt with dépeçage directly, even though finding it not applicable in a given set of circumstances.  *See Warm Springs Forest Products Inds., a div. of Confederated Tribes of Warm Springs Reservation of Oregon v. Employee Benefits Ins. Co.*, 74 Or. App. at 430.  Thus, the doctrine of dépeçage is part and parcel of the application of Oregon conflicts law.  However, while Oregon law has recognized dépeçage, it has not directly applied it to a given set of facts.  Plaintiff takes what can be gleaned from a synthesized and comprehensive look at dépeçage to offer this evaluation of its application here.

### 1. PLAINTIFF'S RESPONDEAT SUPERIOR CLAIMS FOR OREGON ABUSE SHOULD BE GOVERNED BY OREGON SUBSTANTIVE LAW.

Oregon has the greatest concern with respect to Plaintiff's *respondeat superior* claims based on sexual abuse that occurred in Oregon.  This concern extends not merely to damages against the abuser, because it is rare that non-familial abusers themselves will wield enough influence or authority to take a minor across state lines, with parental approval, in contexts that would allow for sexual molestation.  Instead, the abusers are often those in positions of trust and authority, such as priests, coaches, Scout leaders, and teachers.  Oregon has made

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

a judicial policy decision that such acts, when they occur in Oregon, subject the organizations that grant this authority—and that regularly receive the benefit of those adults who perform those duties honorably—to liability without fault where the abuse occurs as a result of actions that were in the course and scope of agency. *See Fearing v. Bucher*, 328 Or. 367, 977 P.2d 1163 (1999) (church can be liable for priest's grooming of child that led to abuse); *Lourim v. Swensen*, 328 Or. 380, 977 P.2d 1157 (1999) (Boy Scouts can be liable for grooming by Scoutmaster that led to abuse). The liability faced by these organizations, as a matter of legislative judgment, extends to past acts of abuse as well as current and future abuse. *See* ORS 12.117 (child abuse victims can bring suit at any time up to age 40 or within 5 years of discovering causal connection between abuse and subsequent injury).

The strict liability imposed by Oregon law on entities that empower child abusers is similar to the products liability law in Alaska, discussed in the *Savage Arms* case. As in *Savage Arms*, the liability here is strict liability, and recovery would almost certainly be denied under the law of the non-locus state for these particular claims. Yet, the business relationship between the parties is less relevant for purposes of making whole the children who are sexually abused in Oregon. Oregon has—as noted above—a preeminent interest in preventing child molestation in the state. As the Alaska court summarized:

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX: (503) 306-0257

> Successor liability is essentially an expansion of products liability law, which derives from tort principles of negligence and strict liability, and rejects contract-derived requirements such as privity.  The purpose of the modern strict liability regime is to insure that the cost of injuries resulting from defective products [is] borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.

*Savage Arms, Inc. v. Western Auto Supply Co.*, 18 P.3d at 53 (citation and internal quotation marks omitted).[12]  Separating out the claims of Oregon abuse, as is allowed under dépeçage, allows Oregon to secure relief for a victim who was abused in Oregon, and hold liable the parties that permitted or facilitated the abuse.[13]

---

[12]  *Contrast to Whitwell v. Archmere Academy, Inc.*, 463 F.Supp.2d 482, 487 (D. Del. 2006) (no allegation that locus of injury "was anything more than the fortuitous choice of a location far from parental supervision").  Interestingly, there was no discussion of Vermont's interests in preventing other states' residents from using Vermont as a place to abuse children.  It is within Oregon's rights to want to make this state as unattractive as possible to pedophiles and the organizations that shelter them.

[13]  Plaintiff anticipates that Defendants will argue that the *respondeat superior* issue is "inextricably intertwined" with the issue of damages, and thus not capable of dépeçage.  The *Savage Arms* case shows that the *respondeat superior* issue may be tied to the underlying tort, and the law of the tort can be imposed on such out-of-state conduct as an employment relationship under dépeçage.  Further, the "inextricably intertwined" caselaw is not applicable here. *See*, *e.g.*, *Boomsma v. Star Transp. Inc.*, 202 F. Supp.2d 869, 878 (E.D. Wis. 2002) (Illinois residents involved in accident in Wisconsin, but could not use dépeçage because third-party claims would be subject to a damages cap whereas underlying claims would not); *Stupak v. Hoffman-LaRoche, Inc.*, 287 F. Supp.2d

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

Once Oregon *respondeat superior* and related tort law is applied to the Oregon abuse, then as a matter of Oregon conflicts law, Oregon's statute of limitations also applies to those claims. *Cropp v. Interstate Distributor Co.*, 129 Or. App. at 514. In this way, Oregon's interests are protected, and they do not interfere with Idaho's enforcement of its own statutory and tort schemes. As with the *Bryant* case from Arizona, the purposes of compensation and deterrence for abuse in Oregon are unquestionably served by this arrangement, and as with California's *Bolt* case, the use of Oregon law for Oregon claims presents a uniform body of law for specific instances of wrongdoing.

Looking at the question from Professor Reese's framework, it is certainly appropriate to use dépeçage to isolate the instances of Oregon abuse and try them under Oregon substantive law. *See* Reese, *Dépeçage*, 73 COLUM. L. REV at 60 (discussing the law's ability to satisfy the state with the "greatest concern," to "effectuate the purpose" of the law, and to "satisfy expectations" of the party). For

---

968 (E.D. Wis. 2003) (dépeçage was inapplicable for teen suicide after taking medicine, dépeçage could not be used because drug maker would be dismissed under products liability statute while doctor would remain liable); *Warm Springs,* 74 Or. App. at 430 (court declined to apply dépeçage where a rebate agreement could not be separated from the remainder of the contract dispute). Because this Court is dismissing the Idaho instances of abuse, because Defendants would all be subjected to the same damages in Oregon, and because no Defendant would enjoy an immunity not shared by the others here, those cases easily distinguished.

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

instance, Oregon has more of an interest in preventing the pernicious evil of child

molestation within its borders than Idaho has in establishing the boundaries of

either acceptable retroactivity of statutes of limitation or liability, or for the acts of

agents of non-domiciliary corporations that were acting outside of Idaho's borders.

The purpose of the law—here, it is Oregon tort law (compensation) and

*respondeat superior* liability (deterrence)—are effectuated **only** by the use of

Oregon law, since Idaho law offers no relief (because of Idaho's construction of its

statute of limitations).  *See Farris v. U.S. Fidelity & Guaranty*, 273 Or. 628, 637,

542 P.2d 1031 (1975) ("doctrine of *respondeat superior* is applied as a policy of

risk allocation," because "the [employer] rather than the innocent injured plaintiff

is better able to absorb and distribute the risk").  Likewise, the complete absence

of remedy in Idaho for child abuse victims puts to lie any argument that Idaho's

interest in seeing child molesters punished can play any part in the analysis.  The

only interest is Idaho's protection of defendants from meritorious but old claims,

and on balance, it is evident that child abuse sits far heavier on the scale in such a

comparison.

Finally, the justified expectations of the parties cannot by any stretch of the

imagination include the application of Idaho law to what amount to crimes

committed in Oregon.  If Laren Arnold had been arrested for child abuse in

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

Oregon, and if for instance it could have been proven that there was an active criminal conspiracy to abuse children in Scouting, Defendants cannot seriously contend that they would expect as corporations to be tried under Idaho law.  The misconduct of an agent subjects a corporation to criminal sanctions of the jurisdiction, irrespective of where the crime occurred.  *E.g.*  ORS 161.170.  There is no difference here.  There is no "justified expectation" on the part of Defendants to escape liability for the torts of its agents based on then-unknown, future procedural vagaries of Idaho law.

For all of these reasons, this Court is entitled to resort to dépeçage under Oregon conflicts law, and dépeçage will support this Court's proposed remedy of splitting off the Oregon abuse and applying Oregon substantive law to Plaintiff's *respondeat superior* claims based on that abuse.

2.   ***Plaintiff's Fraud Claim Is Specifically Tied to Oregon for the Instances of Oregon Abuse, But is Also Timely Under Idaho Law.***

Plaintiff recognizes that he must re-plead his fraud claim with more specificity.  Once that is accomplished, however, the claim will be presumptively timely based on the very recent discovery by Plaintiff of the massive fraud perpetrated by Defendants based on their representations that Scouting did not

Page 22     **PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

pose a danger to Scouts outside of the physical dangers attendant to outdoor activities and similar acts.

If the Court restricts all of the conduct at issue in this case to the Oregon abuse, then dépeçage would still allow the review of those events through the prism of a fraud cause of action.  As discussed in the *Simon* case:

> For actions sounding in fraud and deceit, the substantive law of the state in which the injury is suffered, rather than the state where the fraudulent conduct was initiated, often governs. *See, e.g., Sack v. Low*, 478 F.2d 360, 365 (2d Cir.1973) ("[W]hen a person sustains loss by fraud, the place of wrong is where the loss is sustained, not where fraudulent representations are made."); *Sound Video Unlimited v. Video Shack Inc.*, 700 F.Supp. 127, 134 (S.D.N.Y.1988) (in fraud and related actions, the last event necessary is where the loss is suffered).

*Simon v. Philip Morris Inc.*, 124 F.Supp.2d at 57.  Oregon has no statute of ultimate repose on fraud claims.

Of course, if the Court finds the fraud claim to encompass all the acts of abuse, then this claim would more likely be covered by Idaho, Texas, or Utah law under a dépeçage analysis, but it would not necessarily be untimely.[14]  At least as it relates to Idaho, the Idaho child abuse statute of limitations does not apply to

---

[14]   Plaintiff is mindful of the Court's admonition to discuss only the dépeçage issue.  Because this claim may be dealt with by the Court's decision on dépeçage, Plaintiff offers only this limited and narrow argument relating to the fraud claim by way of comparison.

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

fraud.  *See Doe v. Boy Scouts of America*, 148 Idaho 427, 497–98, 224 P3d 494, 498 (2009) ("Idaho Code title 6, chapter 17 does not simply codify the common law, but creates a new cause of action"); IC § 5-281(4) ("The cause of action in such case [of fraud is] not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake").  Plaintiff is not aware of any statute of ultimate repose for fraud claims in Idaho.

Thus, Plaintiff is under the obligation to replead his fraud claim, and in so doing, this Court can decide the scope of the abuse that will serve to establish damages for that claim.

## CONCLUSION

For the foregoing reasons, this Court's tentative decision was correct, and dépeçage should govern Plaintiff's claims of Oregon abuse.

DATED this 3rd day of August, 2010.

O'DONNELL CLARK & CREW LLP

/s/ *Kristian Roggendorf*

_____

Kelly Clark, Oregon State Bar No. 83172
Kristian Roggendorf, Oregon State Bar No. 01399
Gilion Dumas, Idaho State Bar No. 8176
*Of Attorneys for Plaintiff*

**PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **PLAINTIFF'S BRIEFING ON THE ISSUE OF DÉPEÇAGE**, upon:

Thomas Banducci
Wade Woodard
BANDUCCI WOODARD SCHWARTZMAN, PLLC
802 W. Bannock St., Suite 500
Boise, ID 83702
     *Of Attorneys for LDS Defendants*

Kelly Corr
William Squires
Seann Colgan
Barbara Kastama
CORR CRONIN, ET AL., LLP
1001 4th Ave., Suite 3900
Seattle, WA 98154
     *Of Attorneys for Defendant The Boy Scouts of America*

Stephen Thomas
Paul McFarlane
MOFFATT, THOMAS, ET AL., CHARTERED
101 S. Capitol Blvd., 10th Floor
PO Box 829
Boise, ID 83701
     *Of Attorneys for Defendant Ore-Ida Council*

by ECF on August 3, 2010.

                    O'DONNELL CLARK & CREW LLP

                    /s/ *Kristian Roggendorf*
                    _____
                    Kelly Clark, Oregon State Bar No. 83172
                    Kristian Roggendorf, Oregon State Bar No. 01399
                    Gilion Dumas, Idaho State Bar No. 8176
                         *Of Attorneys for Plaintiff*

O'DONNELL CLARK & CREW LLP
FREMONT PLACE II
1650 N.W. Naito Parkway, Suite 302
Portland, Oregon 97209
Telephone: (503) 306-0224 FAX:  (503) 306-0257