UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TOM DOE, an individual proceeding under a pseudonym<br><br>Plaintiff,<br><br>-vs-<br><br>CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS; BOY SCOUTS OF AMERICA; and ORE-IDAHO COUNCIL INC. BOY SCOUTS OF AMERICA,<br><br>Defendants. | Case No. 1:09-CV-351-BLW<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS |

Before the Court is Defendants Corporation of the President of the Church of Jesus Christ of Latter-Day Saints and Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints (collectively "LDS Church")' Motion to Dismiss (the "Motion"). Upon considering the moving, opposing, replying, and supplemental papers, as well as the parties' oral argument, the Court GRANTS IN PART AND DENIES IN PART the Motion.

**I. Background**

Plaintiff Tom Doe ("Plaintiff") alleges he was sexually abused as a young child by an individual named Larren Arnold who worked at the direction of the LDS Church and the Boy Scouts. The abuse occurred on a number of occasions in the camping grounds of more than one state and with the full knowledge of the LDS Church and the Boy Scouts.

The LDS Church operated a Boy Scout troop for the benefit of the Nampa 2nd Ward. First Amended Complaint (FAC) ¶ 3. In conjunction with the Boy Scouts of America and the

ORDER - 1

Boy Scouts' local chapter,[1] the LDS Church selected so-called "youth leaders" to "educate and minister to [Latter Day Saints] families." *Id.* ¶ 2. Larren Arnold was one such youth leader in the Nampa 2nd Ward congregation. *Id.* ¶ 4. In addition to ministering to families and young children in the Nampa congregation, Arnold was also required by the Boy Scouts to "educate and train young boys . . . in morality, patriotism, and various life skills." *Id.* These duties were referred to as "grooming" – *i.e.*, grooming young children to become good Boy Scouts and faithful members of the LDS Church. *Id.* ¶ 11. Arnold gained the trust of Plaintiff and Plaintiff's family, who eventually entrusted Plaintiff to Arnold's care for extended periods of time. *Id.*

Arnold allegedly abused that trust. Between 1967 and 1970, Arnold "induced and directed Plaintiff [] to engage in various sexual acts with [him]." *Id.* ¶ 9. The specific sexual acts included numerous instances of oral sex and fondling in camping sites throughout the Northwest. At least two specific episodes of abuse occurred in the state of Oregon. *Id.* ¶ 10. Plaintiff suffered this abuse between the ages of 13 and 16. *Id.* ¶ 1 (alleging that Plaintiff was born in 1954).

Even though Arnold committed the abuse against Plaintiff, as a youth leader, he acted as an agent of the LDS Church and the Boy Scouts. Arnold's acts of abuse against Plaintiff were allegedly committed in the scope of his authority and with (at least) the implicit approval of the LDS Church and the Boy Scouts. *Id.* ¶ 11. Thus, the FAC does not named Arnold as a defendant but asserts claims against the LDS Church and the Boy Scouts for: (1) vicarious liability for Arnold's sexual abuse; (2) vicarious liability for Arnold's intentional infliction of emotional distress; (3) negligence; and (4) fraud. The action was removed to federal court and then transferred from the District of Oregon on July 16, 2009. Both Defendants move to dismiss.

---

[1] Both the Boy Scouts of America and the Ore-Ida Council, Boy Scouts of America, are named defendants in the FAC. Both joined in the LDS Church's Motion.

ORDER - 2

## II. Legal Standard

Fed. R. Civ. P. 12(b)(6) provides that a party may move to dismiss a complaint on the grounds that it fails to state a claim upon which relief can be granted. When ruling on a motion to dismiss under Rule 12(b)(6), "[a]ll allegations and reasonable inferences are taken as true, and the allegations are construed in the light most favorable to the non-moving party." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citing *Sprewell v. Golden State Warriors*, 265 F.3d 979, 988 (9th Cir. 2001)). To survive a motion to dismiss, a complaint must do more than put forth "unadorned" and conclusory allegations, but must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 570, 127 S.Ct. 1955 (2007)).

## III. Discussion

### 1. Choice of Law

The parties agree that Oregon law governs the choice of law analysis. Even though a federal court sitting in diversity ordinarily "applies the choice-of-law rules of the forum," *Narayan v. EGL, Inc.*, - - - F.3d - - -, 2010 WL 2735708, at *2 (9th Cir. July 13, 2010), in an action transferred pursuant to 28 U.S.C. § 1404, the choice of law rules of the transferor state control. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 244 n. 8, 102 S.Ct. 252 (1981). Since this diversity action was transferred from the District of Oregon, Oregon's choice of law analysis applies.

Oregon's choice of law analysis proceeds in three stages. First, the court must determine whether there is an "actual conflict of law on the disputed issue" and apply Oregon's law absent a conflict. *Pulido v. United Parcel Serv. Gen. Svcs. Co.*, 31 F. Supp. 2d 809, 813-14 (D. Or. 1998). Second, and if there is a conflict, the court must "determine whether both states have substantial interests in having their laws applied." *Id.* (citing *Dabbs v. Silver Eagle Mfg. Co.*, 98 Or. App. 581, 583-84, *rev. denied*, 308 Or. 608 (1989)). If only one state has a

ORDER - 3

substantial interest in the application of its law to the dispute, there is no conflict and the court applies the law of the state with a substantial interest. *Id.* Third, if both states have a substantial interest in the application of their law to the dispute, the court must determine which state has the "most significant relationship" to the dispute. *Id.*

### A.    Conflict of Law[2]

The laws of Oregon and Idaho may conflict as to the statute of limitations that applies to Plaintiff's claim.

Oregon Revised Statute 12.110(1) applies a two year statute of limitations to actions for assault or battery. ORS § 12.110(1). However, actions for child abuse must be commenced within "five years from the date the person discovers or in the exercise of reasonable care should have discovered the causal connection between the child abuse and the injury." ORS § 12.117(1). In effect, Oregon's statute of limitations for child abuse claims is subject to a "discovery rule."

Idaho's statute of limitations for abuse claims does not recognize such a sweeping discovery rule. Idaho Code 5-219(4) applies a two year statute of limitations to a cause of action for "injury to the person." I.C. § 5-219(4). The statute of limitations runs from the "immediate damage" suffered "at the time of abuse." *Bonner v. Roman Catholic Diocese of Boise*, 128 Idaho 351, 352 (1996). Even though the emotional injury suffered by an abuse victim may not be realized until years after the episode of abuse, the battery suffered as a result of the act of abuse is an "immediate damage" that triggers the statute of limitations. *Id.* (holding that statute of limitations for claims by child abuse victims began to run at the time of the abuse, which caused an "objectively ascertainable injury" to those victims). It is irrelevant whether the abuse victim

---

[2] Though the Oregon Magistrate Judge that recommended the transfer of this case from Oregon to Idaho concluded that Idaho's law should apply to Plaintiff's claims, that conclusion does not bind this Court and, in any event, was *dicta*. It was also erroneous for the reasons discussed below.

ORDER - 4

only discovered the causal relationship between the abuse and the injury more than two years after the abuse. *Id.*

In 1989, Idaho crafted a *separate* cause of action for lewd and lascivious conduct committed against a child under the age of 16, *see* I.C. § 6-1701, that in effect applies a 5 year discovery rule, *see id.* § 6-1704. However, the Idaho Supreme Court has since ruled that section 6-1701 created a new cause of action for child abuse victims that does not have retroactive effect to claims that arose before 1989. *See Doe v. Boy Scouts of America*, 148 Idaho 427, 496 (2009). Thus, individuals were abused as children before 1989 must bring claims under the general abuse statute and otherwise lack access to section 6-1701's more liberal statute of limitations. *Id.*

In effect, Oregon's statute of limitations potentially allows Plaintiff's first two claims to proceed while Idaho's statute of limitations does not. The Court finds a conflict of law between the two states and proceeds to determine whether both states have substantial interests in the application of their laws to the instant dispute.

### B.   Substantial Interest

The parties agree that both Oregon and Idaho have a substantial interest in applying their laws to grave issues like: (1) the potential sexual abuse of a young child; and (2) the potential liability of major religious and national institutions for that abuse. First, as discussed earlier, statutes in both states create specific causes of actions for child abuse. Second, the acts giving rise to all four claims occurred in both Idaho and Oregon; the Court finds that both states have an interest in regulating occurrences of abuse committed on their soil. *C.f. Stubbs v. Weathersby*, 126 Or. App. 596 (1994). Third, even those acts that only occurred in one state – *e.g.*, the commission of sexual abuse in Oregon – were linked in some way to the other statute. For example, Arnold's relationship with Plaintiff was forged and developed in Idaho, and arguably enabled Arnold to transport Plaintiff across state lines into Oregon, where some of the sexual abuse occurred. The Court finds that both statutes have substantial interests in the application of their laws to this dispute and, on that basis, proceeds to the third prong of Oregon's

ORDER - 5

choice of law analysis, which requires a determination of which statute has the most significant relationship to the dispute.

### C. Most Significant Relationship

In their briefing and at oral argument, both parties committed the fundamental error of evaluating the acts of abuse *en masse*. Plaintiff doesn't allege that he suffered a single act of sexual abuse in one state; to the contrary, Plaintiff alleges multiple episodes of sexual abuse and multiple acts of sexual misconduct that constituted each episode. And each episode of "fondling" and "oral sex" gives rise to a new claim of abuse that should be evaluated separately under the most significant relationship prong of Oregon's choice of law standard. Though Plaintiff is the master of his Complaint, he has indicated that the difficult procedural history of this case precluded him from meaningfully amending his Complaint in order to clarify his claims and, in effect, plead each act of abuse separately. Subject to the limitations below, Plaintiff will be afforded that opportunity.

The court may consider the following factors in determining which state has the "most significant relationship" to a particular dispute: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. *Superior Leasing, LLC v. Kaman Aerospace Corp.*, 2006 WL 3756950 (D. Or. Dec. 19, 2006) (noting that the factors are identified by the Restatement, which is "not the law of Oregon" but nonetheless offers guidance to Oregon courts).[3]

---

[3] The manner in which these four factors must be weighed is governed by an additional seven factors, including: (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied. *Superior Leasing,*

ORDER - 6

The application of these four factors yields different results for each alleged act of sexual abuse, because this case truly presents an instance in which a number of discrete acts – linked only by their (potential) similarity in the manner in which they were effectuated – were committed in more than one state. The "claim" in the Complaint may group all of the acts of abuse as a matter of pleading, but that does not do justice to the separate harm occasioned by *each* act of sexual abuse. Accordingly, the Court proceeds to apply Oregon's choice of law framework to each of the Complaint's claims and, further, treats the first two "claims" in the Complaint as encompassing a number of sub-claims that arise out of each independent episode of sexual abuse. *See generally Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1188 (9th Cir. 2001) (applying identical choice of law standard under California law, which requires that choice of law be separately analyzed as to each claim).

### 1. Claims 1 and 2: Sexual Abuse and Intentional Infliction of Emotional Distress

The FAC's first two claims allege two types of injuries – physical injury and emotional injury – that arises out of the same type of conduct – Arnold's abuse of Plaintiff. It therefore makes more sense to sub-divide *both* claims into two classes of conduct: (1) sexual abuse in Idaho that caused emotional distress and physical injury to Plaintiff; and (2) sexual abuse in Oregon that caused emotional distress and physical injury to Plaintiff.

All four Oregon choice of law factors compel the application of Idaho law as to the episodes of abuse in Idaho that give rise to the first and second claims. First, the conduct at issue occurred in Idaho. Second, the injury caused by that conduct was felt in Idaho as well. *See Bonner*, 128 Idaho at 352 (recognizing that each act of sexual abuse against a child results in immediate injury by way of battery and not merely a distant emotional injury that may or may not be realized years after the act of abuse). Third, the relationship between Arnold and Plaintiff that

---

*LLC*, 2006 WL 3756950 at n. 5.

ORDER - 7

gave rise to these episodes of abuse developed in Idaho, because (a) Plaintiff and Arnold spent considerable time together in Nampa and (b) Arnold's relationship with Plaintiff flowed from Arnold's relationship with Plaintiff's parents, who resided in Idaho.  *See* FAC ¶ 7 (alleging trips across the Idaho border into Oregon); Mot. at 4.  Fourth, the parties' residence does not weigh either for or against the application of either Oregon or Idaho law: While Plaintiff and Defendant Ore-Ida were residents of Idaho at the time of the alleged incidents of abuse, *See Summers v. Interstate Tractor & Equip. Co.*, 466 F.2d 42, 48 n. 3 (9th Cir. 1972) (citing *Reich v. Purcell*, 67 Cal.2d 551, 555 (1967)) (noting that place of residence is measured at the time of the incident giving rise to the plaintiff's claim), the Boy Scouts is a resident of Texas and the LDS Church is a resident of Utah.  Thus, the first three factors compel the application of Idaho law to the first and second claims, to the extent those claims arise out of abuse that occurred in Idaho.

        Plaintiff argues that Oregon law should nevertheless apply to the acts of abuse committed in Idaho for two reasons, neither of which is convincing.  First, Plaintiff argues that so-called "secondary" choice of law factors, identified in footnote 3, *supra*, compel the application of Oregon law.  Not so.  Two of the factors don't have any bearing to the issues in this case: there's no harmony that will be achieved in the international system through the application of Oregon law to this dispute (factor 1) and determining the applicable law of Oregon and Idaho isn't particularly challenging, as evidenced by the prior discussion (factor 7).  Both states have distinct interests in the application of their divergent statute of limitations discovery requirements (factor 2) while no other state has an interest in the application of its laws (factor 3): Oregon seeks adequate redress for victims of child abuse while Idaho seeks to prevent law suits from being filed well after the conduct giving rise to the lawsuit occurs.  There's nothing in the FAC about the parties' justified expectations (factor 4), and the basic policies underlying any field of law on child sexual abuse is difficult to discern (factor 5).  Finally, certainty and predictability of result probably compel the application of Idaho law with respect to abuse in Idaho and Oregon law with respect to abuse in Oregon (factor 6).

ORDER - 8

Second, Plaintiff argues that the Court should apply Oregon's statute of limitations in the interests of justice. Oregon Revised Statute § 12.450 provides that the Court may apply Oregon's statute of limitations if another state's statute does not afford a fair opportunity to sue or imposes an unfair burden upon a litigant seeking to bring a particular claim. Idaho Code Section 5-219 does neither. The mere fact that the code provision imposes a two year statute of limitations on Plaintiff's claim does not result in manifest injustice – Plaintiff could have filed its lawsuit within those two years. The Idaho legislature's disinclination to provide a discovery rule does not impose an unfair burden upon Plaintiff either: it merely represents a policy determination by a legislature that did not want to burden its state courts with stale claims.

The balance shifts considerably with respect to the alleged acts committed in Oregon. It cannot be disputed (and it really isn't) that the "conduct" at issue occurred in Oregon. The Boy Scouts argue that "[t]he alleged grooming conduct [and] the alleged vesting of trust in Arnold" occurred in Idaho, but that argument is a red-herring. The abuse may have been made possible by Arnold's relationship with Plaintiff but the abuse itself was the wrongful act giving rise to the first and second claims. The acts leading up to the abuse are mere factual context, irrelevant to the merits of Plaintiff's first and second claims.

Second, the injury was felt in Oregon, though that is a matter of some dispute. Defendants argue that Plaintiff's injury was felt in Idaho, because he allegedly suffered a single injury as a result of *all* of the sexual abuse committed by Arnold. The *Bonner* case repudiates that theory by noting that "[e]ven though the emotional damage the [plaintiffs] say they suffered may not have occurred until they remembered the events, there was also immediate damage *at the time of the abuse*. An act of sexual abuse is a battery and entitles the victim to at least nominal damages in a suit filed immediately after the act." 128 Idaho at 352. This language from *Bonner* should sound familiar to Defendants, because they rely on it when arguing for the dismissal of Plaintiff's claims under Idaho's statute of limitations. But Defendants can't have it both ways: they can't use *Bonner*'s "immediate damage" theory to compel the dismissal of Plaintiff's claims,

ORDER - 9

while disclaiming that very analysis when arguing that Plaintiff felt the injury all at once and in one place. *Bonner* may not be binding but it offers a common-sense analysis of the nature of harm caused by sexual abuse: it is **both** immediate (in its physical manifestations) and long-term (in its emotional effects). Even if Plaintiff suffered only one injury from all the episodes of abuse, it would require the Court to go beyond the FAC to determine *where* that single injury was felt. Plaintiff could have suffered emotional injury after returning home to his family as a young child. But he could have also suffered injury years later, after moving to Oregon where he now resides. In all events, Plaintiff suffered a tremendous physical injury in Oregon when he was allegedly fondled and subjected to acts of oral sex as a young child. Because of the immediate damage caused by the acts that occurred in Oregon, the Court finds that the second choice of law factor (injury) compels the application of Oregon law. The third (place of residence) and fourth (relationship) factors do not favor the application of Oregon law, for reasons discussed above. Nevertheless, the Court finds that the sexual abuse in Oregon that gives rise to the FAC's first and second claims caused injury that was acutely felt in Oregon and that Oregon law should therefore apply.

At oral argument and in their supplemental briefing, Defendants criticize the Court's approach on a number of grounds, none of which are convincing. First, Defendants argue that the Court has impermissibly revived the doctrine of *lex loci delicti*, a long-repudiated doctrine whereby a court applies the law of the forum in which the tort was committed. *See Fisher v. Huck*, 50 Or. App. 635 (1981) (discussing deficiencies in *lex loci delicti* where all significant relationships between the parties weren't centered in the state of the tort). However, while the site of the tort (or the injury) may no longer be dispositive of the choice of law analysis, it obviously still informs two factors in Oregon's four-part choice of law test. *See Superior*, 2006 WL 3756950 (noting that place of conduct and place of injury are first two factors in choice of law analysis). In this case, those factors significantly outweigh the remaining factors – residence and relationship – which may weigh in favor of Idaho law, but not by a great margin. For

ORDER - 10

1  example, the relationship between Arnold and Plaintiff may have developed in Idaho, but Arnold
2  did not live with Plaintiff; they went on camping trips together.  And those trips were taken
3  *throughout* the Northwest, including in Oregon.

4  Second, Defendants cite cases involving late-reported sexual abuse, in which other
5  district courts have applied a single state's law to all instances of abuse, even when those acts of
6  abuse occurred in multiple states.  In *Whitwell v. Archmere Academy, Inc.*, 463 F. Supp. 2d 482
7  (D. Del. 2006), the plaintiff alleged he was subjected to sexual abuse in Delaware, as well as
8  during infrequent trips to Vermont.  After applying a choice of law standard identical to
9  Oregon's, the court held that Delaware law governed *all* of the acts, including those that occurred
10 in Vermont.  *Id.* at 487.  However, that court erroneously relied on the fact that plaintiff's
11 emotional injuries were felt in Idaho; in effect, disregarding the physical injuries caused to
12 plaintiff by the abuse itself.  *See id.*  The state court in *Schultz v. Boy Scouts of America, Inc.*, 480
13 N.E.2d 679 (N.Y. 1985) likewise involved a claim in which the allegedly abused children were
14 claimed to have suffered "severe psychological, emotional and mental pain and suffering" and the
15 court applied the law of the state in which those injuries (mental anguish and suicide) occurred.
16 *Id.* at 683.  Here, by contrast, it isn't clear whether Plaintiff's emotional injuries were suffered in
17 Idaho, and in any event Plaintiff claims physical injuries as well.  Thus, *Schultz* is at best
18 inapposite and at worst detrimental to Defendants' position.

19 Even assuming *arguendo* that (1) Plaintiff suffered only emotional injuries as a result
20 of all acts of abuse *and* (2) Plaintiff suffered his emotional injuries in Idaho and not Oregon, the
21 remaining factors would still not compel the application of Oregon law to the episodes of abuse in
22 Oregon.  Indeed, the Boy Scouts note that choice of law must be determined according to "a
23 flexible analysis of multiple factors depending on the relative strength of each factor ***in the***
24 ***context presented***."  In this case, though not in all cases, the location of the conduct is of
25 overwhelming importance.  The relationship between Arnold and Plaintiff was forged in more
26 than one state, though centralized in Idaho.  Defendants err in separating the acts of abuse from

ORDER - 11

the relationship between the parties – those acts of abuse (including the abuse in Oregon) were critical to the diseased relationship that developed between Plaintiff and Arnold. Given the murkiness of the relationship between the parties and the parties' residence, the undisputed location of the conduct overwhelms the remaining factors.

Defendants' failure to segregate out the *independently actionable* episodes of sexual abuse corrodes the foundation of their analysis. The authorities cited by Defendants almost always involve situations in which a tort occurs in one state between parties who formed a relationship in another state. For example, in *Tower v. Schwabe*, 284 Or. 105 (1978), two Oregon residents traveled in a car from Oregon to British Columbia, where they were involved in a collision due to the driver's intoxication. *Id.* at 107. While British Columbia's law allowed a guest (the passenger) to recover for mere negligence committed by the host (the driver), Oregon required a showing of gross negligence. *Id.* at 107-08. The court applied Oregon law on the grounds that the parties' relationship was centered in Oregon and that Oregon therefore had a greater relationship in the "protection of Oregon hosts" from claims for negligence. *Id.* at 109. In other words, the laws at issue flowed from the relationship between the tort-feasor and the victim. *See id.* at 109 (noting that "British Columbia is legitimately concerned only with the ability of its citizens to obtain compensation for their injuries. Application of Oregon law to a special relationship involving Oregon residents will not offend" that goal).

By contrast, Oregon's discovery rule – and its underlying prohibition on abuse against a minor – does not flow from Oregon's desire to protect only its citizens. Sexual abuse is a concrete wrong that may be committed whether or not the abuser has a relationship with the victim. *See* Restatement of Conflicts § 145, comment d (suggesting that laws concerning immunity from liability and duties of care should be applied based on the state in which the parties' relationship was formed but laws concerning conduct alone should be applied based on the state in which that conduct occurred). States like Oregon have an interest in ensuring that their lands are not used for the improper purpose of abusing child victims. In all events, *Schwabe*

ORDER - 12

is inapposite because that court did not formally work through Oregon's four-pronged choice of law analysis – *i.e.*, the location of the injury and the location of the conduct were never considered and the court disposed of the issue simply by examining the state in which the relationship between the parties was formed.

### 2. Claim 3: Negligence

The FAC's third claim alleges that the Boy Scouts and the LDS Church were negligent in failing to implement adequate sex abuse policies, which was "a substantial contributing factor to the abuse of Plaintiff." FAC ¶ 20-21. Three of the Oregon choice of law factors compel the application of Idaho law to this claim. First, the conduct at issue – failing to adequately train Arnold – occurred in Idaho. Arnold was a youth leader based in Nampa, Idaho. The LDS Church he was assigned to was in Nampa and the Boy Scout troop was based in Nampa as well. Second, the relationship between Plaintiff and the LDS Church and the Boy Scouts was forged in Idaho, since (1) both the church and the troop were centered in Idaho; and (2) Plaintiff's parents, who were Idaho residents, engaged both the LDS Church and the Boy Scouts in Idaho. Any duty owed by Defendants to Plaintiff and Plaintiff's family grew out of the relationship in Idaho. Third, both the Boy Scouts local chapter and Plaintiff were residents of Idaho; though the LDS Church was based in Utah, it maintained a strong presence in Nampa, Idaho because of the local church there and the LDS Church's activities in the community. Even though the alleged negligence caused some injury in Oregon – as discussed *supra* – the other three factors on balance compel the application of Idaho law to the third claim for negligence.

### 3. Claim 4: Fraud

The FAC's fourth claim alleges that Defendants fraudulently "held themselves out to the public, including this Plaintiff and his family, as providing safe, healthy, and trustworthy environments for children," when in fact they knew or should have known of "wide-spread problems with [] volunteers and leaders engaging in inappropriate sexual contact with children." FAC ¶ 25. Applying Oregon's four choice of law factors compels the application of Idaho law to

ORDER - 13

this claim. First, the conduct that gives rise to this claim is the representation(s) made by the LDS Church and the Boy Scouts to Plaintiff and Plaintiff's parents about Arnold's trustworthiness. Those representations occurred in Idaho, not Oregon or any other state. Plaintiff responds that the fraudulent conduct was cooked up in Utah and Texas when the LDS Church and the Boy Scouts ignored information about child abuse committed by their youth leaders, but the actual misrepresentations that give rise to Plaintiff's claim occurred in Idaho. Second, the relationships giving rise to the fraud claim were also forged in Idaho, since Plaintiff and Plaintiff's family were allegedly defrauded in Idaho prior to entrusting Plaintiff to Arnold's care. Third, the relevant residence of the parties was Idaho, for reasons discussed above. And the fourth factor – injury – may have occurred outside Idaho, but is nevertheless outweighed by the remaining three factors. Idaho law therefore applies to the fourth claim for fraud.

### 2. Application to the Merits of Plaintiff's Claims

The merits of each claim must be analyzed separately.

### A. First Claim: Vicarious Liability for Sexual Abuse

Applying Idaho law, the first claim is time-barred to the extent it arises out of the sexual misconduct that occurred in Idaho. Like in *Bonner*, the immediate damage to Plaintiff triggered section 5-219's two year statute of limitations. The instant lawsuit was filed nearly thirty nine years later. Thus, the Motion is GRANTED as to the first and second claims to the extent they arise out of episodes of sexual abuse in Idaho.[4]

However, the first claim may not be time barred to the extent it arises out of episodes of sexual abuse in Oregon. As noted earlier, Oregon's statute of limitations includes a "discovery rule" whereby the statute of limitations does not begin to run until: "(1) the date of the plaintiff's actual discovery of injury; or (2) the date when a person exercising reasonable care should have

---

[4] In light of the dismissal of Plaintiff's claims related to conduct that occurred in Idaho, the Court need not rule on the Church Defendants' argument that Arnold's conduct was outside the scope of his employment. *See* Mot. at 12-13.

ORDER - 14

discovered the injury, including learning facts that an inquiry would have disclosed." *T.R. v. Boy Scouts of Am.*, 344 Or. 282, 293 (Or. 2008). The date on which Plaintiff discovered or should have discovered the connection between his injury and Arnold's alleged conduct is a matter unsuitable for resolution at this early stage. It can be addressed at summary judgment and/or trial. The Motion is therefore DENIED as to the first claim to the extent it arises out of episodes of sexual abuse in Oregon.

### B. Second Claim: Intentional Infliction of Emotional Distress

Like the first claim, the second claim must be dismissed only to the extent it arises out of episodes of sexual abuse in Idaho. Idaho's two-year personal injury statute of limitations governs claims for intentional infliction of emotional distress. *See Johnson v. McPhee*, 147 Idaho 455, 463 (Idaho App. 2009). There is no discovery rule for such claims, which arise under section 5-219. *See id.*; *see also* I.C. § 5-219. The emotional injuries suffered by Plaintiff occurred at least two years prior to the filing of the FAC, since Plaintiff alleges he *discovered* the causal connection between those injuries and Arnold's conduct in 2007. *See* FAC ¶ 14. Thus, the second claim is partially time barred and the Motion is GRANTED as to the second claim to the extent that it arises out of episodes of sexual abuse that occurred in Idaho.

Since Plaintiff alleges that he did not discover the causal connection between his emotional injuries and the acts of sexual abuse in Oregon until 2007, *id.*, the claim survives to the extent it arises out of acts of sexual abuse committed in Oregon. Oregon's two-year statute of limitations for intentional infliction of emotional distress claims is subject to a discovery rule. *See* Or. Rev. Stat. § 12.110(1); *Dauven v. George Fox Univ.*, 2010 WL 1424330, at *5 (D. Or. Jan. 29, 2010). The applicability of the discovery rule can be resolved at summary judgment and/or trial. The Motion is therefore DENIED as to the second claim to the extent it arises out of episodes of sexual abuse that occurred in Oregon.

### 4. Third Claim: Negligence

Negligence claims are governed by a two-year statute of limitations under Idaho law when such claims seek recovery for injury. I. C. § 5-219(4). And Plaintiff's complaint was filed more than two years after the injury for which he seeks recovery.

The Motion is therefore GRANTED as to the third claim.

### 5. Fourth Claim: Fraud

Applying Idaho law, the LDS Church and the Boy Scouts argue that this claim is also time-barred under I. C. § 5-219(4). However, the statute of limitations under that statute is tolled "when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party." *Id.* In such circumstances, "the [statute of limitations] shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of." *Id.*

It is difficult to apply this "discovery" rule in these circumstances, as the fourth claim's fraud allegations are not pled with the particularity required by Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The fourth claim includes merely conclusory allegations about the statements and/or omissions between Plaintiff, Plaintiff's family, and Defendants. Amendment will permit the Court to more accurately assess whether the fraud claims are barred even after application of the discovery rule.

The fourth claim is therefore DISMISSED WITH LEAVE TO AMEND.

## IV. Disposition

For the foregoing reasons, the Court hereby [ORDERS] as follows:

1. The Motion is GRANTED IN PART AND DENIED IN PART as to the first claim;

ORDER - 16

2. The Motion is GRANTED IN PART AND DENIES IN PART as to the second claim;

3. The Motion is GRANTED as to the third claim;

4. The Motion is GRANTED as to the fourth claim, which is DISMISSED WITH LEAVE TO AMEND.

Plaintiff has leave to file an amended pleading within fourteen (14) days of the filing of this Order.

**DATED:** August 11, 2010



**DAVID O. CARTER**

ORDER - 17