IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TOM DOE,<br><br>          Plaintiff,<br><br>   v.<br><br>PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; BOY SCOUTS OF AMERICA; ORE-IDA COUNCIL OF THE BOY SCOUTS OF AMERICA,<br><br>          Defendants. | Case No. 1:09-cv-351-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it the Boy Scout Defendants' motion to strike the Second Amended Complaint, or, in the alternative, to dismiss Counts 3 and 4 of the Second Amended Complaint (Dkt. 126), the Boy Scout Defendants' motion to strike response (Dkt. 132), and the LDS Defendants' Motion to Compel (Dkt. 141).

## BACKGROUND

Plaintiff, Tom Doe, was born in 1953.  Between 1965 and 1971, Doe was an active member of Boy Scout Troop 101, affiliated with the Nampa, Idaho, 2nd Ward of the

Church of Jesus Christ of Latter-Day Saints, rising to the rank of Eagle Scout. *Second Am. Compl.*, ¶ 1, Dkt. 110. LDS church leaders selected and approved the appointment of Boy Scout leaders of affiliated troops, also designating such leaders as "Quorum Advisors" within the church's youth programs. *Id.* at ¶ 2.

Larren Arnold was Doe's Quorum Advisor and Boy Scout troop leader. Mr. Arnold led spiritual, educational, and Boy Scout-related activities for the youth of the Nampa 2nd Ward and Boy Scout Troop 101. *Id.* at ¶ 4. Mr. Arnold allegedly engaged in a practice known as "grooming"; he gained the trust of Doe through time spent together, discussions, and mentorship. *Id.* at ¶¶ 5-7.

Doe made at least two trips to Oregon with Troop 101, accompanied by Mr. Arnold, for overnight camping excursions sometime between 1966 and 1970. *Id.* at ¶¶ 7, 10. On these two trips Mr. Arnold allegedly sexually abused and molested Doe by fondling him and engaging him in oral sex. *Id.* at ¶ 10. Mr. Arnold alleges that he suffered mental, physical, and emotional injuries long after the molestation and that he did not and could not have discovered these injuries, and their relationship to the molestation, before 2007. *Id.* at ¶¶ 10-13.

Doe filed a complaint in Malheur County District Court, Oregon, on February 21, 2008. On March 25, 2008, the complaint was removed to the federal district court for the

District of Oregon.  *Notice of Removal*, Dkt. 2.  The complaint named as defendants two

governing entities of the LDS church ("LDS Defendants") and two governing entities of

the Boy Scouts of America ("Boy Scout Defendants").  The First Amended Complaint,

Dkt. 25, was filed on May 5, 2008.  The FAC set forth claims for (1) sexual abuse of a

child under a respondeat superior theory; (2) intentional infliction of emotional distress

under a respondeat superior theory; (3) negligence; and (4) fraud by omission.  The

matter was transferred to this Court on July 9, 2009.  *Order Adopting Report and*

*Recommendations*, Dkt. 74.

On August 12, 2010, visiting Judge David Carter, sitting by designation, granted in

part and denied in part the Defendants' motion to dismiss the First Amended Complaint.

*Order Granting in Part and Denying in Part Motion to Dismiss*, Dkt. 109.  The Court

dismissed as time-barred Doe's first claim, sexual abuse of a child, and second claim,

intentional infliction of emotional distress, insofar as they arose out of events occurring in

Idaho.  These claims remained to the extent they arose out of events occurring in Oregon.

The court dismissed as time-barred Doe's negligence claim.  The court dismissed Doe's

fraud claim, with leave to amend, finding the allegations insufficient to meet Fed. R. Civ.

P. 9(b)'s pleading particularity requirements.

Doe filed his Second Amended Complaint on August 25, 2010.  Dkt. 110.  The

Second Amended Complaint set forth claims for (1) sexual abuse of a child under a respondeat superior theory; (2) intentional infliction of emotional distress under a respondeat superior theory; (3) institutional fraud by omission; and (4) constructive fraud. On February 8, 2011, the Boy Scout Defendants moved to strike, or in the alternative to dismiss, Doe's third and fourth claims.  Dkt. 126.  After briefing by both parties, the Boy Scout Defendants moved to strike the declarations of Doe and Kristian Roggendorf, attached to Doe's response in opposition (Dkt. 130) to the Boy Scout's motion to dismiss. Dkt. 132.

## LEGAL STANDARD

### 1.    Motion to Strike

Under Federal Rule of Civil Procedure 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Some district courts have struck amendments to a complaint that fall outside the scope of expressly limited leave to amend.  *See, e.g., PB Farradyne, Inc. v. Peterson*, 2006 WL 2578273, *3 (N.D. Cal. Sept. 6, 2006).

### 2.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule

12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth

"more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." *Id*. at 555. To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to "state a claim to relief that is

plausible on its face." *Id*. at 570. A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a

"probability requirement," but it asks for more than a sheer possibility that a defendant

has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent

with" a defendant's liability, it "stops short of the line between possibility and plausibility

of 'entitlement to relief.' " *Id*. at 557.

In a more recent case, the Supreme Court identified two "working principles" that

underlie *Twombly*. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). First, the tenet

that a court must accept as true all of the allegations contained in a complaint is

inapplicable to legal conclusions. *Id*. "Rule 8 marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 1950.

Second, only a complaint that states a plausible claim for relief survives a motion to

dismiss. *Id.* "Determining whether a complaint states a plausible claim for relief will . . .

be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.*

Providing too much in the complaint may also be fatal to a plaintiff. Dismissal may

be appropriate when the plaintiff has included sufficient allegations disclosing some

absolute defense or bar to recovery. *See Weisbuch v. County of L.A.*, 119 F.3d 778, 783,

n.1 (9th Cir. 1997) (stating that "[i]f the pleadings establish facts compelling a decision

one way, that is as good as if depositions and other . . . evidence on summary judgment

establishes the identical facts").

A dismissal without leave to amend is improper unless it is beyond doubt that the

complaint "could not be saved by any amendment." *Livid Holdings Ltd. v. Salomon

Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The Ninth Circuit has held that "in

dismissals for failure to state a claim, a district court should grant leave to amend even if

no request to amend the pleading was made, unless it determines that the pleading could

not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v.

Northern California Collection Service, Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). The

issue is not whether plaintiff will prevail but whether he "is entitled to offer evidence to support the claims." *See Hydrick v. Hunter*, 466 F.3d 676, 685 (9th Cir. 2006).

## DISCUSSION

**1.**     **Motion to Strike Third and Fourth (Fraud) Claims in Second Amended Complaint**

The Boy Scout Defendants allege that Doe violated the limited scope of permission to amend granted by the Court because the new fraud counts are "cut from whole cloth" and fail to allege specific leadership decisions or notice regarding Larren Arnold. *Boy Scouts Memorandum*, 10, Dkt. 126-1. Doe argues that the Court, though it discussed and considered possible methods of amendment, never expressly limited the scope to amend in the manner alleged by the Boy Scout Defendants.

The Boy Scout Defendants' Motion to Strike is denied for three reasons. First, the Court order in which leave to amend was granted contains no explicit limitation: "The fourth claim includes merely conclusory allegations about the statements and/or omissions between Plaintiff, Plaintiff's family, and Defendants. Amendment will permit the Court to more accurately assess whether the fraud claims are barred even after application of the discovery rule." *Order Granting in Part and Denying in Part Motion to Dismiss*, Dkt. 109, 16:20-21. In its substantive rulings section, the Court simply states,

without elaboration, that the Defendants' motion to dismiss was granted as to the fourth (fraud) claim, with leave to amend. *Id.* at 17:4-5.

Second, the statements made by the Court during oral argument on the motion to dismiss do not support the Boy Scout Defendants' allegations of an express limitation on Doe's leave to amend. The Court stated that it was "tentatively giving you leave to amend concerning your fraud claim of action. . . . And the real question you should have in your mind is, is this judge going to rule definitively on this in a new 12b [sic] motion or is this judge going to let this go to summary judgment stage and take a look at this . . ." *July 20, 2010 Reporter's Tr.* 37:8-37:25,, Ex A. to Thomas Aff.

Finally, Doe simply expanded his single fraud claim into two distinct, arguably more specific fraud claims; he did not conjure up new, far-reaching causes of action that had not been previously presented to the Defendants. Doe's amendment was not made in bad faith, did not cause undue delay, and did not prejudice the Boy Scout Defendants. *See Foman v. Davis*, 371 U.S. 1778, 182 (1962).

**2.      Motion to Dismiss Third and Fourth (Fraud) Claims in Second Amended Complaint**

The Boy Scout Defendants, in the alternative, moved to dismiss the third and fourth claims in the Second Amended Complaint. The third claim asserts Institutional

Fraud by Omission, while the fourth claim asserts Constructive Fraud. *Second Am. Compl.*, ¶¶ 22-35. Essentially, both these claims allege that the defendants had general knowledge of child molesters and abusers within the ranks of Boy Scout troop leaders, and their failure to warn or disclose this information resulted in Doe's molestation. The Boy Scout Defendants argue that (1) the third and fourth claims fail to meet the *Iqbal/Twombly* pleading particularity standards, and (2) Doe failed to plead the elements of common law fraud under Idaho law.

A preliminary issue must be resolved before the Court can turn its attention to whether Doe's amended fraud claims satisfy the pleading requirements of *Iqbal* and *Twombly*. The Boy Scout Defendants contend that the Second Amended Complaint should be dismissed because it fails to allege fraudulent concealment of the fact of damage by a party with whom he had a professional and commercial relationship. Such concealment is necessary to toll Idaho's two-year personal injury statute of limitations, codified at I.C. § 5-219(4).

Doe argues that his fraud claims are governed by Idaho's three-year statute of limitations for fraud, codified at I.C. § 5-218(4). Significantly, under § 5-218(4), a fraud claim does not accrue until discovery of the *fraud*, as opposed to discovery of the fact of

damage.[1]  Doe contends that he did not discover the Defendants' fraud until sometime in

2007 or 2008, when his attorneys learned that files exist indicating that the Boy Scout

national office became aware at least as early as the mid-1960s that serious problems

existed with Scoutmasters molesting the young boys placed in their charge.[2]  Thus, it

appears that the fraud claims are not time-barred if the three-year fraud statute, with its

discovery rule, is applied.

Defendant Boy Scouts argue that "the issue of which statute of limitations applied

was previously, briefed, argued and decided by Judge Carter."  *Boy Scout Defendants*

*Reply* at 2, Dkt. 131.  However, this overstates the case, at least with regard to whether

Idaho Code § 5-218(4) or Idaho Code § 5-219(4) applies to Doe's fraud claims.  The

Court has reviewed the briefing submitted to Judge Carter and there appears to be little

discussion about which statute applies, apart from the LDS Defendant's argument in their

---

[1] Specifically, the statute establishes a 3-year statute of limitations for any "action for
relief on the ground of fraud or mistake."  Idaho Code § 5-218(4).  The statute further provides
that "[t]he cause of action in such case not to be deemed to have accrued until the discovery, by
the aggrieved party, of the facts constituting the fraud or mistake."  *Id.*

[2] In the Complaint, the Plaintiff alleged that they did not learn until 2010 of the Boy
Scout Defendant's knowledge of the extent of the child abuse problem within their institution.
Second Amended Complaint, Dkt. 110, ¶ 32.   In Plaintiff's briefing, however, they
acknowledge that this allegation of the complaint is inaccurate and they actually learned of the
Boy Scout Defendant's knowledge in 2007 or 2008.  *Plaintiff's Response*, Dkt. 130, at 16, n.4.

opening brief that § 5-219(4) should apply, but that Doe's claims would be barred even if the fraud limitations period is used. *LDS Defendant's Br.* at 8-11, Dkt. 92. The issue of which statute should apply was not otherwise addressed in the briefing. Nor is it specifically addressed by Judge Carter.

It appears that Judge Carter assumed, without specifically deciding, that Idaho Code § 5-219(4) applied to Doe's fraud claims, as well as to his negligence, emotional distress, and vicarious liability claims. The full text of that portion of Judge Carter's decision addressing the statute of limitations applicable to Doe's fraud claim reads as follows:

> Applying Idaho law, the LDS Church and the Boy Scouts argue that this claim is also time-barred under I.C. § 5-219(4). However, the statute of limitations under that statute is tolled "when the fact of damage has, for the purpose of escaping responsibility therefor, been fraudulently and knowingly concealed from the injured party by an alleged wrongdoer standing at the time of the wrongful act, neglect or breach in a professional or commercial relationship with the injured party." Id. In such circumstances, "the [statute of limitations] shall be deemed to accrue when the injured party knows or in the exercise of reasonable care should have been put on inquiry regarding the condition or matter complained of." Id.
>
> It is difficult to apply this "discovery" rule in these circumstances, as the fourth claim's fraud allegations are not pled with the particularity required by Rule 9(b). See Fed. R. Civ. P. 9(b) ("[I]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The fourth claim includes merely conclusory allegations about the statements and/or omissions between Plaintiff, Plaintiff's family, and Defendants. Amendment will permit the Court to more accurately assess whether the fraud claims are barred even after application of the discovery rule.

*Order Granting in Part and Denying in Part Motion to Dismiss*, Dkt. 109, at 16.  It is

clear from reading Judge Carter's well-crafted decision, that he simply did not address the

question of whether § 5-218(4) or § 5-219(4) provides the applicable statute of

limitations.  This is understandable given the dearth of briefing and the focus in the prior

proceedings on the difficult conflict-of-law issues in this case.    For these reasons, the

Court concludes that it is writing on a clean slate with regard to which statute of

limitations applies.

An argument can be made for the application of either statute.   Doe has clearly

based his third and fourth claims for relief on allegations of fraud, and Idaho Code § 5-

218(4) provides a three-year limitation period for any "actions for relief on the ground of

fraud...."   On the other hand, the relief sought is based upon personal injuries suffered by

Doe as a result of the alleged fraud, and Idaho Code § 5-219(4) provides a two-year

limitation period for any "action to recover damages for an injury to the person."

However, the Court is not without some guidance as to how to resolve a claim that

is arguably covered by both statutes.  The Idaho Supreme Court confronted a similar

situation in *Umphrey v. Sprinkel*, 682 P.2d 1247 (Idaho 1983).   There, the plaintiffs

successfully asserted a claim of fraud against real estate agents based upon

representations made concerning the road access and water supply for a parcel of land.

The defendant's contended before the trial court and on appeal, that the claims were in the

nature of professional malpractice and were therefore barred by the two-year statute of limitations under Idaho Code § 5-219(4). The Idaho Supreme Court rejected that argument, holding that "an action for fraudulent misrepresentation does not fall within the protective embrace of the professional malpractice statute." *Id.* at 1253. In reaching this conclusion, the Idaho Supreme Court reasoned:

> [t]he gist of a malpractice action is negligence....An action for fraud or deceit involves more than mere negligence. While it is a tort action, it is more in the nature of an intentional tort, requiring that the speaker have knowledge of the representation's falsity or ignorance of its truth, as well as intent that the representation be relied upon. In addition, the plaintiff must prove all elements by clear and convincing evidence as opposed to the less stringent preponderance of the evidence standard used in ordinary negligence cases. Hence, we believe that an action for fraud and deceit is not within the purview of a malpractice action.

*Id.* at 1253 (citations omitted).

The Court went on to justify its holding by suggesting that the Idaho legislature made a policy choice to provide greater leeway for a potential plaintiff who alleges fraud, because of the inherent difficulties in pursuing such a claim. It noted that this policy decision "is founded upon the realization that fraud, an intentional and often orchestrated scheme, is ordinarily more difficult to discover than a negligent injury." *Id.* at 1254-55. The Court continued: "Our holding is consistent with the legislature's clear intent to afford victims of fraud more time in which to discover the machinations which led to their exploitation." *Id.* Thus, the *Umphrey* decision teaches that the specific fraud statute of

limitations, with its provision for accrual upon discovery, should be applied where the plaintiff has specifically alleged fraud and assumed the heavy duty of proving an intentional tort by clear and convincing evidence.

Relying upon the decision of the Illinois Supreme Court in *Doe A. v. Diocese of Dallas,* 917 N.E.2d 475 (Ill. 2009), the Boy Scout Defendants argue that the two-year "personal injury" statute of limitations should be applied because Doe's fraud claim is really a claim for personal injury.  In the *Diocese of Dallas* case, the court disregarded the plaintiff's characterization of their claims as based in fraud, and applied a shorter statute of limitations because the damages sought in the fraud claims were the same damages sought in their other claims for relief.  The Illinois Supreme Court offered the following explanation for their decision:

> The specific injuries alleged in the fraud counts are, in fact, identical to those set forth in the other counts…. The law is well established that the limitations period governing a claim is determined by the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises. Because the injuries alleged in the fraud counts are the same as those alleged in the counts governed by the limitations period for damages for personal injury based on childhood sexual abuse, they are likewise subject to the childhood sexual abuse limitations period.

917 N.E.2d at —.

The Court is unpersuaded by the *Diocese of Dallas* case.  First, it is questionable that this principle is "well established" as suggested by the *Diocese of Dallas* court.  *See, e.g., Garden City Osteopathic Hosp. v. HBE Corp.,* 55 F.3d 1126, 1133 (6th Cir. 1995)

(concluding that the Michigan Supreme Court would examine the "nature and origin" of a claim to determine the applicable limitations period, and would look, not at the type of damages, but rather at the source of damages); *Hydro-Mill Co., Inc. v. Hayward, Tilton and Rolapp Ins. Associates, Inc.,* 10 Cal.Rptr.3d 582, 589 (Cal.App. 2004)(indicating that the nature of the right sued upon and not the form of action nor the relief demanded determines which statute of limitations applies). Second, the Court has been unable to find any decision of the Idaho appellate courts suggesting that the applicable statute of limitations should be determined by reference to the damages sought rather than the nature of the claim asserted. Indeed, the Idaho courts appear to follow a different rule – that the "appropriate statute of limitations is determined by the substance, not the form, of the action." *Nerco Minerals Co. v. Morrison Knudsen Corp.*, 140 Idaho 144, 148 (Idaho 2004) (quoting *Trimming v. Howard*, 52 Idaho 412, 416, 16 P.2d 661, 662 (1932)).

For the reasons set forth above, the Court concludes that the specific statute of limitations applicable to fraud claims – Idaho Code § 5-218(4) – applies to Doe's third and fourth claims for relief. Moreover, the allegations of the Second Amended Complaint adequately allege that Doe did not discover "the facts constituting the fraud," until less than three-years prior the filing of the initial complaint in this action. Accordingly, those claims will not be dismissed at this time on statute of limitations grounds. Whether those allegations can withstand closer scrutiny on summary judgment remains to be seen.

As noted above, the Boy Scout Defendants also contend that the third and fourth claims do not satisfy the *Iqbal*/*Twombly* standards and do not adequately plead the elements of common law fraud under Idaho law.   This argument brings into play both the general pleading requirements of Rule 8(a) and the specific requirements of Rule 9(b) that in alleging fraud, a party must "state with particularity the circumstances constituting the fraud.  The Ninth Circuit has recently addressed the interplay of these two rules:

> Until now, we have not had occasion explicitly to confirm that *Iqbal 's* plausibility requirement applies to claims subject to Rule 9(b). We have, however, said that "complaints alleging fraud must comply with both [Federal Rules of Civil Procedure] 8(a) and 9(b)." [Internal Citation omitted.]  Because Rule 8(a) requires the pleading of a plausible claim, *Iqba*l, 129 S.Ct. at 1949–50, we hold that claims of fraud or mistake—including FCA claims—must, in addition to pleading with particularity, also plead plausible allegations. That is, the pleading must state "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc*, 637 F.3d 1047, 1055 (9th Cir. 2011).   The Court is persuaded that Doe has satisfied the requirements of Rules 8(a) and 9(b), as articulated in the *Cafasso* decision.

The elements of fraud include:  (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.  *Lettunich v. Key*

*Bank Nat. Ass'n*, 109 P.3d 1104, 1110 (Idaho 2005). The Court will address each element in turn.

Doe alleges that the Boy Scout Defendants made a statement or representation of fact in a number of different respects: by inviting and encouraging Doe to participate in the Scouting program; promoting the program as being safe and beneficial for boys; including provisions in the Boy Scout Handbook describing the Scoutmaster as "a wonderful man" who goes on hikes and goes camping with the Scouts, suggesting that the Scoutmaster "is the friend to whom you can always turn for advice," and indicating that the Scoutmaster, "should be able at all times to count on each of 'his boys' to be his right-hand helper."

Doe also alleges that the Boy Scout Defendants had a duty to disclose the known dangers of pedophilic Scoutmasters. According to the Idaho Supreme Court, silence may constitute fraud when a duty to disclose exists. *G & M Farms v. Funk Irrigation Co.*, 808 P.2d 851 (Idaho 1991), A party may have a duty to disclose: (1) if there is a fiduciary or other similar relation of trust and confidence between the two parties; (2) in order to prevent a partial statement of the facts from being misleading; or (3) if a fact known by one party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it. *Sowards v. Rathbun*, 8 P.3d 1245, 1250 (Idaho 2000).

In support of their "silence as fraud" claim, Doe makes several arguments. First, he alleges that the statements made by the Boy Scouts about the wholesome nature of their institution and the paternalistic role a Scoutmaster should play in a young man's life were, at best, a partial statement of the facts, which needed to be corrected by other contrary information in the possession of the Scout Defendants. *Second Amended Complaint* at ¶¶ 23-24, Dkt. 110. Second, Doe alleges that the invitation to join scouting created a "special, fiduciary relationship," and that the Scout Defendants exercised *in loco parentis* responsibilities over the scouts.[3] *Id.* at ¶¶ 4-7, 23. The Court finds that either allegation is sufficient to take advantage of the "silence as fraud" doctrine recognized by the Idaho Supreme Court in *Rathbun*.

The Court also finds that the remaining elements of fraud are adequately pled. Doe's "silence as fraud" allegations, as well as his allegation that, contrary to representations that Scoutmasters were appropriate mentors and leaders for youth, the Scout Defendants knew prior to Doe's involvement in scouting that there was a serious

---

[3] Courts have been appropriately skeptical of claims of a fiduciary relationship. *See, e.g., Doe v. Holy See (State of Vatical City),* 17 A.D.3d 799 (N.Y. App. 2005)(declining to find a fiduciary relationship based solely upon the defendant's sponsorship of religious and educational programs). Indeed, Idaho has only recognized a fiduciary relationship "when the parties are: members of the same family, partners, attorney and client, executor and beneficiary of an estate, principal and agent, insurer and insured, and close friends." *Mitchell v. Barendregt*, 820 P.2d 707, 714 (Idaho App. 1991). However, that inquiry is inherently factual and dependent upon the nature of the specific relationship in question. Therefore, the existence of that relationship is more appropriately tested in the context of a Rule 56 motion, than on a motion to dismiss.

and far-reaching problem with Scoutmasters using their position to abuse young men, satisfy the falsity requirement. With respect to materiality, Doe alleges that the representations were material because he would not have entered into the scouting program if he or his parents had been aware of the dangers of child molesters functioning as Scoutmasters. *Second Amended Complaint*, Dkt. 110, at ¶ 26. Doe also specifically alleges that the Scout Defendants were aware of the falsity of their representations because of information collected overtime and available to them long before Doe entered the scouting program. *Id.* at ¶ 24. Finally, Doe alleges that (1) the Scout Defendants intended that there be reliance on their representations since it was critical to the success of their institution; and (2) Doe and his parents were ignorant of the falsity of the statements, and justifiably relied on those statements to their injury. *Id.* at ¶¶ 28-29.

The Court therefore concludes that the Third and Fourth Claims for Relief[4] satisfy

---

[4] The Court is concerned that the Fourth Claim for Relief, alleging constructive fraud, is redundant and unnecessary. As the Idaho Supreme Court noted in Gray v. *Tri-Way Const. Services, Inc.* 210 P.3d 63, 71 (Idaho 2009):

> "An action in constructive fraud exists when there has been a breach of a duty arising from a relationship of trust and confidence, as in a fiduciary duty." Hines v. Hines, 129 Idaho 847, 853, 934 P.2d 20, 26 (1997).
>
> . . .
>
> "The gist of a constructive fraud finding is to avoid the need to prove intent (i.e., knowledge of falsity or intent to induce reliance) [under the elements required to prove actual fraud], since it is inferred directly from the relationship and the breach." Country Cove Dev., Inc. v. May, 143 Idaho 595, 601, 150 P.3d 288, 294 (2006).

It would appear, that a claim of constructive fraud is not necessarily an independent claim, but an alternative means of proving two key elements of fraud.

both the particularity requirements of Rule 9(b) and the plausibility requirements of Rule 8(a) and *Iqbal/Twombly.*

### 3. Motion to Strike Responses

The Boy Scout Defendants move to strike the declarations and attached exhibits of Kristian Roggendorf and Tom Doe (Dkt. 130-1, 130-2, & 130-3), filed with Doe's opposition to the Boy Scout Defendants' motion to strike or dismiss. The declarations contain: (1) transcript excerpts from the trial of *Lewis v. BSA,* an Oregon state case; (2) the Supplemental Declaration of Nathaniel Marshall, from the case of *Jack Doe I, et al v. BSA, et al,* also an Oregon state case; (3) excerpts from the declaration of Myron Child, taken for the case of *D.I. v. Corporation of the Presiding Bishop of the Church of Jesus Christ of Latter-day Saints, et al*, also an Oregon state case; (4) excerpts from the 1968 Boy Scouts of America handbook. The Boy Scout defendants argue that these extrinsic documents are irrelevant when considering a motion to dismiss. In the alternative, the Boy Scout Defendants argue, if the Court were to convert the motion to dismiss to a motion for summary judgment, the extrinsic documents are inadmissible.

When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond. *See* Fed.R.Civ.P. 12(b); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n.4 (9th Cir.

1998).  A court may, however, consider certain materials – documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice – without converting the motion to dismiss into a motion for summary judgment. *See Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002).

Doe's extrinsic documents are inappropriate for judicial notice because they are not records and reports or administrative bodies.  *Interstate Nat. Gas Co. v. S. Cal. Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953).  Nor do they constitute facts "not subject to reasonable dispute . . . capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201.  Doe's extrinsic documents were not attached to the Second Amended Complaint.  Doe's extrinsic documents were not incorporated by reference into the Second Amended Complaint because they were not referred to "extensively" therein, nor do they "form[] the basis of the . . . claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  *Cf. Parrino*, 146 F.3d at 705-06 (incorporation by reference appropriate when plaintiff's insurance claim is based on content of coverage plan); *In re Silicon Graphics Secs. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (incorporation by reference appropriate when plaintiff's stock fraud claim is based on the contents of SEC filings).

Thus, the extrinsic documents must be excluded, or the motion must be converted to one for summary judgment.  A district court has discretion to convert a motion to

dismiss under Rule 12(b)(6) to a motion for summary judgment. Typically, the court will

exercise this discretion when a defendant's motion to dismiss is accompanied by

evidentiary materials outside the pleadings. *See Salveson v. Western States Bankcard*

*Ass'n*, 731 F.2d 1423, 1430 (9th Cir. 1984). All parties must be given a reasonable

opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P.

12(d).

In this case, the Boy Scout Defendants attached no extrinsic evidence to their

motion, but Doe opposed the motion with copious extrinsic documents. The Boy Scout

Defendants did not answer this evidence in their reply.[5] Discovery in this case is in its

infancy, and the parties have not yet been given a reasonable opportunity to present all

materials that would be pertinent to a motion for summary judgment. However, in

reaching its decision in this case, the Court has not found it necessary to consider the

extrinsic materials provided by Doe. Accordingly, the Court will conclude that the

motion to strike is moot.

## 4.      Motion to Compel

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, "[p]arties may

obtain discovery regarding any matter, not privileged, that is relevant to the claim or

---

[5] The Boy Scout Defendants filed an affidavit with their reply memorandum. Dkt. 131-1. This affidavit was a transcript from a previous hearing before this Court related to the argument that Plaintiff exceeded the permissible scope of amendment, justifying striking thereof. It did not relate to the alternative Motion to Dismiss.

defense of any party." Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *See United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). If evidence is relevant, it is generally admissible under Federal Rule of Evidence 402. *See id.* A district court has discretion to deny a motion to compel discovery if the request is "unnecessarily burdensome and overly broad." *Sorosky v. Burroughs Corp.*, 826 F.2d 794, 805 (9th Cir. 1987) (citing *Scott and Fetzer Co. v. Dile*, 643 F.2d 670, 674-75 (9th Cir. 1981)).

The LDS Defendants seek, through propounded interrogatories 6, 7, 13, 15, and 21, such wide-ranging information as the names and dates of every hospital and physician visit Mr. Doe has ever had or visited, a detailed description of every injury, illness, or operation Mr. Doe has ever had, all of Mr. Doe's medical records since 1965, and all records from any counseling or psychiatric treatment Mr. Doe has ever received. *Mtn. to Compel*, Dkt. 141-1 at 3.

The LDS Defendants allege that Mr. Doe "put his medical records for the last 45 years at issue by claiming he is continuing to suffer 'debilitating <u>physical</u>, mental, and

emotional injur[ies]' from sexual abuse." *Id.* at 6. Mr. Doe states that he has furnished

all medical records relating to the condition or injury for which recovery is sought, and

thus the additional discovery sought by the LDS Defendants is irrelevant. Mr. Doe also

claims the requested records are protected by physician-patient privilege.

Analysis of various privileges (doctor-patient; psychotherapist-patient) is

unnecessary because of two undisputed principles. First, under the laws of any state, a

plaintiff must disclose medical records relating to any condition he himself puts at issue.

*See, e.g., Maynard v. City of San Jose*, 37 F.3d 1396, 1402 (9th Cir. 1994). Medical

records unrelated to the conditions put in issue by a plaintiff are not relevant and are thus

not discoverable, regardless of whether a specific privilege is applicable.

The LDS Defendants' motion is granted insofar as it relates to conditions put in

issue by Mr. Doe, but is denied as to the overly broad, burdensome, irrelevant, complete

medical history the interrogatories seek. For those conditions Mr. Doe will seek to prove

at trial, complete discovery must be provided. Mr. Doe will not be permitted to proceed

at trial regarding any alleged medical conditions, mental or physical, for which complete

discovery is not provided to the Defendants.

## CONCLUSION

Doe's Second Amended Complaint did not exceed the permissible scope of

amendment and shall not be stricken. Doe's third and fourth claims are governed by the

fraud statute of limitations and it is not apparent on the face of the complaint that those claims are time-barred. The third and fourth claims adequately set forth allegations of fraud under requirements of Rules 8(a) and 9(b). Because the Court did not consider the extrinsic documents filed by Doe, the Boy Scout Defendants' motion to strike will be deemed moot. The LDS Defendants' motion to compel is granted insofar as it relates to conditions put in issue by Mr. Doe, but is denied as to the overly broad and irrelevant medical history the interrogatories seek. However, Doe will be precluded from presenting any claims for damages related to medical conditions where the associated medical records were withheld.

## ORDER

**IT IS ORDERED THAT:**

1.     The Boy Scout Defendants' Motion to Strike (Dkt. 126) is **DENIED**.

2.     The Boy Scout Defendants' alternative Motion to Dismiss (Dkt. 126) is **DENIED**.

3.     The Boy Scout Defendants' Motion to Strike (Dkt. 130) is **DENIED as MOOT**.

4.     The LDS Defendants' Motion to Compel is **GRANTED** in part and **DENIED** in part to the extent stated herein (Dkt. 141).

DATED: **August 5, 2011**



_____
Honorable B. Lynn Winmill
Chief U. S. District Judge