IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TOM DOE, an individual proceeding under a pseudonym,<br><br>       Plaintiff,<br><br>       v.<br><br>CORPORATION OF THE PRESIDING BISHOP OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a foreign corporation sole registered to do business in the State of Oregon; CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS AND SUCCESSORS, a foreign corporation sole registered to do business in the State of Oregon; THE BOY SCOUTS OF AMERICA, a congressionally chartered corporation, authorized to do business in Oregon; and ORE-IDA COUNCIL, INC., BOY SCOUTS OF AMERICA, an Idaho non-profit corporation doing business in Oregon,<br><br>       Defendants. | No. 1:09-cv-00351-BLW<br><br>**MEMORANDUM DECISION AND ORDER ON DISCOVERY DISPUTES** |

## INTRODUCTION

Four discovery motions are pending before the Court. Plaintiff filed two motions to compel production of documents – one aimed at the Boy Scout Defendants (Dkt. 160) and the other at the LDS Church Defendants (Dkt. 163). Defendants responded with

Memorandum Decision - 1

motions for protective orders that address largely the same issues.  (Dkts. 166, 170).  The Court heard oral argument on June 4, 2012 and now issues its decision.

## BACKGROUND

Plaintiff Tom Doe alleges that his scout leader sexually abused him from 1967 through 1970, beginning when plaintiff was around 13 years old.  He says the Boy Scouts of America and the LDS Church jointly ran his scout troop, and that both organizations "knew that the Scouting program itself posed a danger to adolescent boys because the Scouting program had shown a concrete, longstanding, consistent, and widespread problem with sexual abuse by Scout leaders and adult volunteers."  *Second Am. Compl.*, Dkt. 110, ¶ 24.  Doe asserts various claims against the Boy Scouts and the Church, including fraud by omission.

## THE LEGAL STANDARD

The Federal Rules of Civil Procedure create a "broad right of discovery" because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth."  *Epstein v. MCA, Inc.*, 54 F.3d 1422, 1423 (9th Cir.1995) (quotations omitted).  Litigants "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  Relevant information – for purposes of discovery – is broadly defined to include all information "reasonably calculated to lead to the discovery of admissible evidence."  *Id.*

But there are limits to what a party may properly seek in discovery. "District courts need not condone the use of discovery to engage in 'fishing expeditions.'" *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) (citation omitted). Further, even if a district court determines that a party is seeking relevant information, it may, upon a showing of good cause, enter any protective order that "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, . . . ." Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing what specific prejudice or harm will result if no protective order is granted." *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).

## MOTION TO COMPEL AIMED AT THE BOY SCOUT DEFENDANTS

The motion to compel aimed at the Boy Scouts addresses eight document requests: Nos. 3, 5, 23-26, 28, and 33. Before discussing each individual request, the Court will address objections applicable to multiple requests.

### A.     General Objections

At the threshold, the Boy Scouts argue that plaintiff's fraud claim will not withstand summary judgment. So they urge the Court to put off deciding the discovery motions because they believe any effort expended in producing documents will ultimately be wasted. The Court rejects this argument for a number of reasons.

First, this is an aging case and it has already been stayed twice in the past. The Court is not persuaded to further delay the case based on a discovery dispute.

Second, plaintiff's fraud claim withstood an attack on the pleadings. Thus, it makes sense to press forward with discovery.

Third, the Court is not persuaded that plaintiff's claim will obviously and necessarily fail on summary judgment. The Court will of course reserve judgment on this point until the parties have briefed the issues in the summary judgment motion. In the meantime, however, the Court preliminarily reviewed the relevant law and determined that while plaintiff will face an uphill battle, he has a chance of surviving the motion. *Cf., e,g., Martinelli v. Bridgeport Roman Catholic Diocesan Corp.*, 196 F.3d 409 (2d Cir. 1999) (court upheld jury's determination that a fiduciary relationship existed between the diocese and a child parishioner who had been sexually abused by a priest).

The Court is also not persuaded by the Boy Scouts' relevance objection, which is raised in response to several requests for production. For example, in responding to a request for the Boy Scouts' internal "perversion files,"[1] the Boy Scouts argue that the only relevant file is the one for the perpetrator in this case – Larren Arnold. But plaintiff wishes to demonstrate that the Boy Scouts should have warned him of pedophile scoutmasters based on their decades-old knowledge of child sex abuse within scouting. In the discovery setting, files other than Arnold's are relevant to this broader issue.

The Boy Scouts' related argument that the time frame should be narrowed is somewhat more persuasive, since plaintiff is, in many instances, asking for documents reaching back to 1910. As detailed below, the Court will limit the time period to 1950

---

[1] *See* discussion *infra*, related to Document Request No. 26.

**Memorandum Decision - 4**

through 1972 (seventeen years before the first alleged abuse and two years after the last) for requests seeking documents that could show defendants' alleged knowledge regarding child sex abuse within scouting.  The Court will typically use a more restrictive time period – 1962 to 1972 – for requests seeking documents that could show what the defendants did with this knowledge.

Finally, the Boy Scout Defendants generally argue that producing many of the requested documents would violate the privacy rights of third parties.  *See generally Nation v. Idaho Dept. of Corr.,* 158 P.3d 953 (Idaho 2007) (discussing tort of invasion of privacy, which encompasses a claim for public disclosure of private facts; indicating that the matter made public must be "offensive and objectionable" to a person of "ordinary sensibilities").  These privacy rights, however, do not justify a wholesale denial of the motions to compel.  Instead, the Court will order production of certain documents subject to a protective order.

With these rulings in place, the Court will address the requests individually.  For ease of reference, each request is set out verbatim, with the Court's ruling immediately following.

**B.     Requests Seeking "Claims Documents"[2]**

**Request No. 26 – Perversion Files**

Request No. 26 asks for:

---

[2] The Court discusses request seeking "claims" documents (No. 24-26) first, and those seeking "policy" documents second.

**Memorandum Decision - 5**

>All "Perversion" category IV [Ineligible Volunteer] Files – including "Red Files," "Confidential Files," or any other prior appellation for the IV Files, created between 1910 and the [sic] 1972.

The Boy Scouts Defendants are ordered to produce responsive documents for the time period 1950 to 1972, subject to a protective order. The parties are ordered to meet and confer to work out the precise terms of the protective order, but, at a minimum, the protective order should provide that the following names be redacted before the documents are produced: (1) the alleged victim; (2) the alleged perpetrator; and (3) the people who reported the alleged abuse.

During oral argument, the Boy Scouts offered to create a roster showing how many perversion files were created in any given year. The Boy Scouts also directed the Court to *Sanchez v. City of Santa Ana*, 936 F.2d 1027 (9th Cir. 1990) for the proposition that statistical evidence – rather than the details of any given file – is the only thing that is arguably relevant to plaintiff's notice argument.

In an employment case such as *Sanchez* – where the underlying data deals with details such as salary, terminations, and the like – limiting discovery to statistical evidence makes sense. But the underlying data in this case is not comprised of such easy-to-categorize facts, and the plaintiff has explained that he needs to obtain the underlying data to develop his own theories and statistics. For example, at oral argument, plaintiff's counsel indicated that most abuse occurred when scoutmasters went off alone with scouts. Additionally, plaintiff's counsel indicated that the files themselves will show that Boy Scouts' statistical argument – *i.e.*, that only a tiny fraction of their adult volunteers have

perversion files – is flawed because the perversion files reveal that other files were destroyed. The roster the Boy Scouts offer would not allow plaintiff to develop these types of statistics and arguments.

The Court is also unpersuaded by the Boy Scouts' undue burden argument. The Boy Scouts indicate that there are roughly 800 perversion files, ranging in size from three pages per file to some that are six inches thick. Plaintiff, however, points out that all the IV files are contained in a locked filing cabinet in a "small office in BSA's Dallas headquarters." *BSA Mot.*, Dkt. 161, at 14. All things are relative, but the Court does not view a production of the perversion files as unduly burdensome. Further, these documents have been produced in other litigations, which leads the Court to believe that the files must have been vetted to some degree and therefore will be (or should be) more efficiently and easily produced in subsequent rounds.

The Court also rejects the Boy Scouts' attorney work product objection. Even assuming the Boy Scouts properly preserved this objection, it lacks merit. Under governing Ninth Circuit law, the Boy Scouts have failed to show that they would not have created the IV files in their current form but for the prospect of litigation. In other words, it appears that these documents were already being created for reasons other than anticipated litigation. *See generally United States v. Richey*, 632 F.3d 559, 568 (9th Cir. 2011).

### Request No. 24 – Complaints

Request No. 24 asks for:

**Memorandum Decision - 7**

> All complaints or petitions that have been filed against Defendant BSA in any state or federal court from 1910-1972, which allege sexual misconduct by an employee, agent, and/or adult volunteer of Defendant BSA perpetrated against a minor involved in Scouting.

The Boy Scout Defendants are ordered to produce all responsive documents, although the time frame will be limited to 1950 to 1972.

### Request No. 25 – Depositions

Request No. 25 asks for:

> All deposition transcripts and videos of deposition testimony given by Paul Ernst and successive BSA Directors of Registration related to lawsuits alleging sexual abuse.

The Boy Scout Defendants are ordered to produce responsive documents, though the scope will be limited. Responsive documents should include only those where the named individuals testified regarding abuse that occurred during 1950 to 1972. Further, the Boy Scouts are ordered to produce documents within their custody and control, even if the documents are not in their actual possession. *See generally* Fed. R. Civ. P. 34 (a)(1) (party may serve document request asking for documents within responding party's "possession, custody, or control, . . . .").

C.  **Requests Seeking "Policy Documents"**

### Request No. 3 - Reporting and Investigation Policies

Request No. 3 asks for

> All documents pertaining to how reports of sexual abuse perpetrated by adult volunteers against Boy Scouts should be reported, investigated, and/or otherwise addressed by Defendant BSA, local councils, and/or Boy Scouts troops during the time period 1910-1972.

The Boy Scout Defendants offered to produce responsive documents for the time period 1962 to 1970. The Court will order the Boy Scout Defendants to produce responsive documents for a slightly broader period – from 1962 to 1972.

### Request No. 5 – Sex Abuse Prevention Documents

Request No. 5 asks for

All documents pertaining to sexual abuse prevention and/or the risk of sexual abuse of Boy Scouts by adult volunteers, which were distributed to adult volunteers, parents or guardians of Boy Scouts, and/or Boy Scouts themselves during the years 1910-1972.

The Boy Scout Defendants are ordered to produce responsive documents for the time period 1962 through 1972.

### Request No. 23 – Meeting Minutes.

Request No. 23 asks for:

All minutes of all meetings of the National Office, Boy Scouts of America, and Management Executive Staff from 1910-1972, which pertains to the sexual abuse of Boy Scouts."

The Boy Scout Defendants are ordered to produce responsive documents, but the time frame will be limited to 1950 to 1972.

### Request No. 28 – Information Related to IV Files

This requests asks for: "All versions of BSA's internal memorandum regarding the procedures for creating an IV File." The Boy Scout Defendants are ordered to produce responsive documents, but the time frame will be limited to 1950 to 1972.

### Request No. 33 – Warnings to Scouts, Parents, Volunteers

This requests asks for:

**Memorandum Decision - 9**

> All documents distributed to adult volunteers, parents or guardians of Boy
> Scouts, or Boy Scouts themselves in Troop 101 during the time period
> 1962-1972 that specifically warn about and/or address the subject of adult
> volunteers who sexually abuse Boy Scouts.

The Boy Scout Defendants agreed to produce responsive documents for the time period 1967 to 1972. These defendants are ordered to produce documents responsive to the broader time frame set out in the request – 1962 to 1972.

### MOTION TO COMPEL AIMED AT THE LDS CHURCH DEFENDANTS

The motion to compel aimed at the LDS Church Defendants addresses five document requests: Request Nos. 18, 19, 20, 23, and 25.[3] The issues were significantly narrowed during briefing, however. *See Plaintiff's Reply,* Dkt. 182, at 3.

Once again, before delving into the individual requests, the Court will address an issue that arises in multiple requests. Specifically, in many of his requests, plaintiff seeks documents related to any type of alleged child sex abuse within the LDS Church. The Court is willing to broadly define relevance, particular in the discovery context, but plaintiff is overreaching here. Even the most cursory review of the complaint shows that this case is about child sex abuse within scouting. Discovery will be limited accordingly. With that view of the case in mind, the Court will turn to the specific requests.

---

[3] Plaintiff moved to compel documents responsive to Request No. 22 as well, which asks for correspondence between the church and law enforcement agencies relating to allegations of child abuse that occurred between 1950 and 1972. The Church indicated that it has no responsive documents. *See Church Response*, Dkt. 173, at 4. The Court will therefore deny as moot plaintiff's motion to compel documents responsive to Request No. 22.

**Memorandum Decision - 10**

**Request No. 18 – Historical Documents**

Request No. 18 asks for:

All documents concerning any allegation of child abuse against any stake president, bishop, home teacher, youth group leader, Sunday school teacher, or person in any other calling or assignment, occurring during the period 1950 to 1972.

In their briefing, the parties began referring to these documents as "historical documents." Additionally, at this point, plaintiff has narrowed the request to historical documents for LDS churches within the State of Idaho. The Church indicated that historical documents typically include benign records, such as Sunday meeting programs. Church counsel also indicated that searching through microfiche records to produce these documents would be exceedingly difficult.

The Court denies this request because plaintiff has not shown how the larger category of documents sought (records for the whole state) is relevant. The Church is, however, ordered to follow through on its offer to produce historical documents for plaintiff's Nampa ward and stake dating back to 1950.

**Request No. 19 – Settlement Documents**

Request No. 19 asks for:

All documents concerning any settlements, releases, waivers, closure, or any other resolutions of any allegations of inappropriate conduct with children, against any of the persons mentioned in Request No.18 above, whether such resolution of allegations was made with or without litigation.

Plaintiff says he will settle for a generic chart (with no identifying, confidential information) detailing settlement of child sex abuse claims, where the abuse occurred

**Memorandum Decision - 11**

between 1950 and 1972. The Church is ordered to produce a generic chart detailing settlement of sex abuse claims, where the abuse occurred between 1950 and 1972 and either (1) occurred in a scouting context, or (2) was perpetrated by a person who, at the time of the abuse, had some affiliation with the scouting program even if the abuse itself did not occur as part of a scouting activity.

**Request No. 20 – Other Child Abuse Complaints**

This request asks for:

All petitions or complaints from lawsuits filed against the LDS Church or any LDS Church related entities that contain allegations of sexual child abuse occurring during the time period 1950–1972.

The Church is ordered to produce complaints (regardless of when filed) where the a minor plaintiff alleges sexual abuse between 1950 and 1972 that either (1) occurred in a scouting context, or (2) was perpetrated by a person who, at the time of the abuse, had some affiliation with the scouting program even if the abuse itself did not occur as part of a scouting activity.

**Request No. 23 – IV Files**

Request No. 23 asks for "[a]ll documents concerning the Boy Scouts of America's Red Files, Confidential Files, or Ineligible Volunteer Files." The Church says it did not find out about the IV files until "well after" the 1950 to 1972 time period. Plaintiff, however, wants any documents – created at any time – that show how the Boy Scouts and the Church shared knowledge of child sex abuse problems within their organizations.

**Memorandum Decision - 12**

Plaintiff's motion on this request is denied. If plaintiff is trying to prove the LDS church had a duty to warn him about the dangers of pedophiles in scouting, the church's knowledge of the IV files in the years leading up to and during his scouting activities is relevant. But if the LDS found out about these files "well after" that time frame, this does not speak to the church's then-current knowledge of pedophiles using scouts to access and molest young boys.

**Request No. 25 - Depositions**

Request No. 25 asks for:

All deposition transcripts and videos of deposition testimony given by any agent, official, representative, or leader of the LDS Church related to lawsuits alleging sexual abuse.

This request again raises the issue of whether sex abuse cases outside the scouting context are relevant, as the Church has offered to produce deposition transcripts of church "leaders and agents related to claims of abuse in scouting during the 1950-72 time period." The Court will therefore deny plaintiff's motion, although the Court will order the Church to follow through on its offer to produce documents and will further broaden the scope of responsive documents to include claims where a minor plaintiff alleged sex abuse that either (1) occurred in a scouting context, or (2) was perpetrated by a person who, at the time of the abuse, had some affiliation with the scouting program even if the abuse itself did not occur as part of a scouting activity.

**Memorandum Decision - 13**

**ORDER**

**IT IS ORDERED:**

1.      Plaintiff's Motion to Compel Production of Documents by the Boy Scouts of America (Dkt. 160) is **GRANTED in part**, and **DENIED in part**, as explained above.

2.      The Boy Scout's Motion for a Protective Order (Dkt. 166) is **DENIED**, as the Boy Scouts sought an order denying any discovery of the perversion files. Nonetheless, as explained in the body of this decision, the Court is ordering the Boy Scouts to produce perversion files subject to a protective order. The parties are ordered to meet and confer in an effort to draft a mutually acceptable proposed order. If necessary, the Court's law clerk, Marci Smith (208-334-9019), is available to assist in this effort.

3.      Plaintiff's Motion to Compel Production of Documents from the LDS Church (Dkt. 163) is **GRANTED in part** and **DENIED in part**, as explained above.

4.      The LDS Church Defendants' Motion for a Protective Order (Dkt. 170) is **GRANTED in part**, and **DENIED in part**, consistent with the rulings made above. Further, to the extent plaintiff originally sought to compel production of church membership and disciplinary records, the motion is **DEEMED MOOT.**

5.      The parties are further ordered to meet and confer as to the timing of any document productions ordered herein. The Court's law clerk is available to assist in informally resolving disputes regarding the timing of these productions. Defendants

should be aware, however, that the Court will err in favor of compelling a speedy production.



DATED: **June 7, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision - 15**